1           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF KENTUCKY
2             CENTRAL DIVISION
               LEXINGTON
3

4  UNITED STATES OF AMERICA,

5      PLAINTIFF,

6                        Criminal No. 5:16-CR-3
  VS.                    At Lexington, Kentucky
7                        January 10, 2017
                        10:00 a.m.
8
  JAMES MATTHEW SHELTON,
9
      DEFENDANT.
10

11
     TRANSCRIPT OF SENTENCING PROCEEDINGS BEFORE
12      U.S. DISTRICT JUDGE DANNY C. REEVES

13

14

15  APPEARANCES:

16
  For the Plaintiff:   Hon. David A. Marye
17                    Assistant United States Attorney
                    260 West Vine Street
18                    Suite 300
                    Lexington, Kentucky  40507-1612
19                    (859) 685-4873

20
  For the Defendant:   Hon. R. Michael Murphy
21                    709 Millpond Road
                    Lexington, Kentucky  40514
22                    (859) 333-8422

23

24      Proceedings recorded by mechanical stenography,
   transcript produced by computer.
25

SANDRA L. WILDER, RMR, CRR, OFFICIAL COURT REPORTER
310 South Main Street, Suite 317, London, Kentucky  40745
(859) 516-4114

1             [IN OPEN COURT]

2             THE COURT:  Thank you.  Madam Clerk, if you

3     would call the matter scheduled for 10:00.

4             DEPUTY CLERK:  Yes, Your Honor.  Lexington

5     Criminal Action Number 16-3, the United States of

6     America versus James Matthew Shelton, called for

7     sentencing.

8             THE COURT:  Thank you.  And if the attorneys

9     could state their appearances, please.

10            MR. MARYE:  Yes, Your Honor.  David Marye on

11    behalf of the United States.

12            THE COURT:  Thank you.

13            MR. MURPHY:  Good morning, Your Honor.

14    Michael Murphy on behalf of James Matthew Shelton.

15            THE COURT:  And this is Mr. --

16            MR. MURPHY:  Mr. Shelton is seated to my

17    immediate left.  Yes, Your Honor.

18            THE COURT:  All right.  Thank you.  This

19    matter's scheduled for a sentencing hearing this

20    morning.

21            Before we proceed with the hearing, let me

22    first confirm that Mr. Shelton has had the opportunity

23    to review his presentence report and also to discuss

24    the report with his attorney to his satisfaction; is

25    that correct, Mr. Shelton?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Mr. Shelton, your presentence
3   report will be placed in the record under seal.  It's
4   not available for the general public to review.

5        There are no objections to the presentence
6   report, and, therefore, I will adopt the findings that
7   are contained in the report, as well as the guideline
8   calculations.  I will review those with the parties in
9   just a moment.

10       Before I do so, let me remind counsel that if
11  there are any additional factors that you would like
12  to call to my attention that are relevant to
13  sentencing, under Title 18, Section 3553, please do so
14  during allocution.

15       I'll also note for the record I have reviewed
16  the sentencing memorandum filed by the United States
17  in the case, as well as the memorandum filed by the
18  defendant, which also includes a request for relief
19  under Title 18, Section 3553(a), which the Court
20  reviews as a variance from the guideline range.

21       Let me begin by reviewing the guideline
22  calculations in the report.

23       The offense level calculations begin at
24  paragraph 16.  The 2016 Edition of the Guideline
25  Manual has been used.

1            The base offense level was a level 32.  There

2    are a number of adjustments that are set forth in

3    paragraphs -- or enhancements -- set forth in

4    paragraphs 18, 19, 20 and 21 that results in an

5    adjusted offense level of 40 in this case.

6            There's a three-level reduction shown for

7    acceptance of responsibility.  Before the Court can

8    award the third level of acceptance credit under

9    3E1.1(b), it does require a motion from the United

10   States.

11           MR. MARYE:  Your Honor, the United States

12   would so move.

13           THE COURT:  All right.  That motion will be

14   sustained.  And that has the effect of reducing the

15   total offense level to 37.

16           Mr. Shelton's not had any criminal history

17   points, and, therefore, he was placed in a Criminal

18   History Category I.

19           For purposes of calculating the range in the

20   case, there is a mandatory minimum term of ten years

21   in this case by statute, but the guideline range is

22   significantly greater than the mandatory minimum.  The

23   guideline range as set forth in paragraph 59 is a

24   range of 210 to 262 months.  The guideline range for

25   supervision is a range of five years to life, as set

1  forth in paragraph 62.

2       The fine range in the case is a range of

3  $20,000 to $200,000; that's outlined in paragraph 80.

4       The report indicates that there has not been

5  a claim for restitution in this matter, and at the

6  appropriate time, I'll ask the United States to

7  confirm that that is in fact still the case.

8       Those are the relevant guidelines that the

9  Court has adopted in this matter.

10      This was a plea to Count 2 of a multi-count

11 indictment.  Is the United States moving to dismiss

12 the remaining substantive counts at this time?

13      MR. MURPHY:  Yes, Your Honor.

14      THE COURT:  All right.  That motion will be

15 sustained.  Those additional counts, Counts 1 and 3,

16 will be dismissed effective upon entry of the judgment

17 in the case.

18      Unless there are other motions to be taken

19 up, we'll proceed with allocution.  I'll hear from

20 Mr. Murphy initially, and also from Mr. Shelton, if he

21 would like to address the Court.  And after I've heard

22 from the United States, Mr. Murphy, I'll give you a

23 chance to respond, if you wish to do so.

24      MR. MURPHY:  If Your Honor please, may I use

25 the lectern?

1          THE COURT:  Yes.  That's fine.

2          MR. MURPHY:  First, Your Honor, I'd like to

3    thank the Court for moving the sentencing so I was

4    able to attend Mr. Walters' memorial service

5    yesterday.

6          THE COURT:  Yes, sir.

7          MR. MURPHY:  It was a difficult day for me,

8    but I appreciate you doing that.

9            This case is, like any case of this nature,

10   is a troubling situation, Your Honor.  What is

11   refreshing, though, is to have a client like

12   Mr. Shelton, who from day one, has fully admitted his

13   guilt and his involvement in this activity.

14            There's really no way to downplay how serious

15   these cases are, so I won't -- I won't bore the Court

16   or waste time trying to do that.  Everybody knows

17   that -- the damage that can fall out from this case,

18   and I'm just glad that it didn't get beyond what it

19   actually did.  Because the victims in cases like this

20   are always haunted, many of them, for the rest of

21   their lives.  And I don't know that that's going to be

22   the case here; I certainly hope not, but I think the

23   actual damage to a victim is -- is -- may be a factor

24   that could be considered a positive for Mr. Shelton.

25            That being said, what I would like to

1  emphasize, in addition to what I've already said in my

2  sentencing memorandum -- and I won't repeat any of

3  that -- is just emphasize that he has no criminal

4  history, that this is probably somewhat aberrant

5  behavior on his part.  He does have some mental health

6  issues.

7          THE COURT:  Well, let's -- let me stop you

8  there for a moment.  When you indicate that it's

9  aberrant behavior, that's -- that wouldn't necessarily

10  be borne out by the competency evaluation of the

11  report that was prepared in the case that's indicated

12  he's had some mental health concerns, and at least a

13  pedophilia concern that's reflected in the report for

14  some period of time, so I'm not sure that we can say

15  that this is aberrant behavior.

16          MR. MURPHY:  Well, maybe that was a poor

17  choice of words on my part.

18          Yes, that's there.  That's in the report.

19  That's been documented.  That's part of his mental

20  health issues in this case.

21          I don't know that he's ever acted out in the

22  past on that.  Maybe only he could tell us that.  But

23  the mental health issues are of a concern to me, and

24  they concern me because they will probably haunt him

25  the rest of his life.

1          I've had a lot of conversations by telephone
2     with his mother, who is very ill, and she wanted me --
3     I talked to her again this morning -- she wanted me to
4     emphasize to the Court that she cannot be here for
5     financial reasons, and mostly because of health
6     reasons.  She wanted the Court to know that -- that
7     she fully supports her son, that she loves him very
8     much, and that she said, "Just ask the judge to be
9     fair with him," and I assured her that he would.
10          That being said, I'm going to say something
11    that's probably not going to make my client very
12    happy, but he is one of the most immature individuals
13    I've ever dealt with.  If there was ever a
14    stereotypical mama's boy, then my client is one.  He
15    doesn't even have a driver's license.  He doesn't
16    drive a car.  He doesn't have a job.  He's pretty much
17    his whole life, with the exception of a few jobs that
18    he's been able to obtain as an adult, has been taking
19    care of his mother and being dependent on his mother.
20    He was pretty much her sole caretaker, and she's lost
21    that.
22          I don't know, even if he -- even if you're
23    lenient with him and give him the sentence that we've
24    asked for and that the government has agreed
25    graciously to recommend, I don't know that she'll be

1    alive when -- when he's released from prison.

2         The other thing that I would like to

3    emphasize to the Court is that what will protect

4    society and what will help him are the very, very

5    strict conditions of supervised release that I know

6    that this Court is going to impose in this case, as

7    most judges do in most cases of this nature.

8         So that being said, again, I want to

9    emphasize to the Court that I don't know that a

10   sentence in the properly calculated guideline range

11   would do anything more for him, or society, for that

12   matter, than a sentence at or near the bottom end of

13   the guidelines as initially calculated, and that would

14   be in that 14-year range at right at 168 months.

15        So in a nutshell, I would just say what would

16   18 or 20 years or more do that 14 years wouldn't do?

17        THE COURT:  Other than protecting the public

18   for that period of time.

19        MR. MURPHY:  That would -- that would be the

20   one factor that would be of concern to the Court, and

21   I fully understand that.

22        THE COURT:  All right.

23        MR. MURPHY:  But I'm just asking the Court

24   myself -- and I know I've never had issue with you not

25   being fair, or never thought that -- I'm asking the

1 Court on his -- behalf of his mother that you be fair

2 with him, and that you not only give deference to what

3 I have recommended and what we have recommended, but

4 also what Mr. Marye has recommended.  I know that

5 carries a lot of weight with the Court, and I ask that

6 you consider that.

7          Mr. Shelton, would you like to have some

8 words with the Court?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Yes, sir.

11          THE DEFENDANT:  I'd like to say that, you

12 know, I understand that what I did was wrong and I

13 understand the punishment that goes along with it.

14 And ever since all of this -- since 2014, I've

15 regretted it every day of my life.  And I am truly

16 sorry for anybody that I've harmed throughout this and

17 on my case.

18          THE COURT:  All right.  Thank you, sir.

19          THE DEFENDANT:  Thank you.

20          THE COURT:  Mr. Marye.  Mr. Marye, are you

21 familiar with the term cognitive dissonance?

22          MR. MARYE:  I think so, Judge.

23          THE COURT:  It's where you -- it's mental

24 stress that's caused when you have two or more

25 contradictory ideas or beliefs.  And that would appear

1  to be present from your sentencing memorandum because

2  you take the position initially -- well, you take the

3  position that the Court should impose a variance below

4  the guideline range in the case.  Then you proceed to

5  talk about how serious the offense is.  Of course,

6  those concerns would not support a variance.  They

7  seem to be contradictory principles.  And then you

8  cite some cases that under 3553(a)(6), which I do want

9  you to discuss those cases, and we'll talk about those

10  a bit, but it seems like you've taken contradictory

11  positions here.

12       This case either is serious or it's not

13  serious, and if it's not, then perhaps a variance is

14  appropriate.

15       MR. MARYE:  I -- yes, sir, I -- I understand

16  what you're saying.

17       I think it -- I mean, I think these cases are

18  serious, absolutely, Judge.  And I guess the main

19  reason in my mind that a sentence at or near what the

20  parties have calculated the guidelines at would

21  perhaps be appropriate in this case, is that he was

22  not in a position to follow through with the threats

23  that had been made.  Those were what had concerned the

24  law enforcement very much early on.

25       THE COURT:  Don't you have concerns based

1 upon his mental health history going --

2          MR. MARYE:  Oh, absolutely.

3          THE COURT:  Excuse me.

4          MR. MARYE:  I'm sorry.

5          THE COURT:  -- going forward?  When you look

6 at the type of person that commits some serious

7 offenses throughout the country, against the school,

8 against individuals, they have some of the same

9 characteristics, it would seem, as this defendant

10 does, very immature, willing to act out, perhaps some

11 history of suicidal idolization, a lot of the same

12 concerns.

13          And in page 8 of the competency evaluation,

14 mental health professionals indicate that those

15 conditions that he suffers from are not likely to

16 change in the future.  So he's likely to be as

17 affected and immature and willing to act out perhaps

18 20 or 30 years from now as he is today.  So the fact

19 that he didn't act out on the concerns, that's good

20 that he didn't, but that doesn't alleviate the concern

21 that we all should have.

22          MR. MARYE:  I -- agree, Your Honor.  And the

23 approach that I guess I had in mind is that, well,

24 obviously, he would get a substantial sentence and

25 that I could not imagine the Court would go any lower

than the 168.  And frankly, I -- I didn't think you

would probably go that low, Judge.

THE COURT:  Let's talk about the cases that

you've cited.

MR. MARYE:  Yes, sir.

THE COURT:  Let me ask you the question

first, and then you can respond to it.

First, you cite cases for the proposition and

you make the argument that under 3553(a)(6), that the

Court should consider other sentences imposed in

essentially comparable cases in this district.  That's

your argument, correct?

MR. MARYE:  Yes, sir.

THE COURT:  And you're aware that under

3553(a)(6), that relates to nationwide sentencing

disparities and not disparities within a particular

district or within a circuit; you're aware of that,

aren't you?

MR. MARYE:  Yes, sir.  I -- I understand

that.

THE COURT:  So the citation of 3553(6)

doesn't really apply here, does it?  Because you're

trying to compare this case to justify a variance

based on other cases within this district that you've

handled.

1          MR. MARYE:  Yes, Your Honor.

2          THE COURT:  That's not nationwide sentencing

3 disparities.

4          MR. MARYE:  No, absolutely not.  That's--

5          THE COURT:  But that's the section that you

6 cite, correct?

7          MR. MARYE:  Yes, sir.

8          THE COURT:  All right.  Now, cases that you

9 cite.  I want you to tell me a few things about those

10 cases, such as I want you to describe the offense

11 conduct, the guideline range in those cases, the

12 criminal history information of those defendants,

13 whether there were mental health or emotional concerns

14 of those defendants, whether those defendants had any

15 history of substance abuse, their educational

16 background, prior opportunities for treatment, and any

17 other information that you think makes those cases

18 comparable.  Because you've -- you've cited some

19 cases -- I don't have the presentence reports, save

20 one, so it's really hard -- even if I accept your

21 argument, that I should consider these other cases --

22 it's really hard for me to do so without seeing the

23 presentence report, so I'm going to rely upon you to

24 tell me why these cases are similar.

25          MR. MARYE:  Okay.

1          THE COURT:  For example -- for example, the

2     guideline ranges in the cases that you've cited in

3     Judge Van Tatenhove's Court *Coy* and *Collins,* the best

4     I can determine, the guideline range in those cases

5     was 70 to 87 months, but there was mandatory minimum

6     terms of 120 months.  So those were not downward

7     variances, were they?

8          MR. MARYE:  Oh, no, no.  I -- and I in no way

9     meant to indicate that they were downward variances,

10    Your Honor.  And I apologize if the Court -- if I --

11    if I misled the Court in that regard.  I certainly did

12    not intend to do so.

13         THE COURT:  The first case that you've cited,

14    the *Waters* case, that was a binding plea agreement,

15    wasn't it?

16         MR. MARYE:  Yes, Your Honor, I believe it

17    was.

18         THE COURT:  And the parties had agreed upon

19    the sentence before the Court ever imposed the

20    sentence, otherwise, the defendant could have had the

21    opportunity to withdraw it, his plea?

22         MR. MARYE:  Yes, sir, if the Court had

23    rejected the binding plea agreement.

24         Although if I may, there was one change there

25    in that we had not negotiated anything as far as a

1  supervised release term, that I recall, and the Judge

2  indicated that there -- it would have to be a life

3  term of supervised release, if he would accept that

4  plea.

5          THE COURT:  And then in the -- the other

6  case, the case that actually I had --

7          MR. MARYE:  Yes, sir.

8          THE COURT:  -- was a guideline sentence as

9  well.  Mr. Cantrell received a guideline sentence, as

10  opposed to a variance below his guideline range.

11          MR. MARYE:  Absolutely, Judge.  And I, again,

12  I apologize; I did not mean to mislead the Court, and

13  I didn't intend to mislead the Court that these were

14  variances.  They were just other cases that I had

15  handled of that particular offense, and --

16          THE COURT:  Well, the question becomes

17  whether they're comparable cases, and that's why I

18  want you to tell me some of these comparables here.

19          MR. MARYE:  Sure.  Probably the one that

20  would be most comparable is the one you handled on

21  Mr. Cantrell, Your Honor, in that --

22          THE COURT:  The teacher who was having an

23  affair with a student who was older than 13 --

24          MR. MARYE:  Yes, sir -- pardon?

25          THE COURT:  -- who was substantially older

1 than 13?

2       MR. MARYE:  Yes.  Yes.  He -- yes, that's

3 correct.  And I think that is the one that is the most

4 similar, in fact, in terms of the facts related to

5 this case.

6       THE COURT:  And the guideline range was

7 substantially higher because we didn't have these

8 aggravating factors that are applied here, correct?

9       MR. MARYE:  I believe that's correct, Judge,

10 yes, sir.

11       And one of the things that I did not mention

12 in the sentencing memo that I probably should have is

13 that I believe that the Court should definitely impose

14 a very, very substantial term of supervised release on

15 this particular defendant, Mr. Shelton, regardless of

16 what sentence you would impose, whether it's a

17 variance or not.

18       THE COURT:  Does that provide absolute

19 protection to the public once he's released --

20       MR. MARYE:  No, I don't think --

21       THE COURT:  -- those stringent conditions?

22       MR. MARYE:  I don't think it provides

23 absolute protection, absolutely not, Judge, no.  But I

24 think -- and the more stringent and the longer term of

25 the supervised release that would be imposed upon him

1 would be the -- the best thing obviously, to protect

2 the public to have him being supervised very carefully

3 for a very substantial period of time.

4        As you pointed out, and I -- I tend to agree,

5 he has some very serious mental emotional problems,

6 and he should be very closely monitored in the future.

7        THE COURT:  All right.

8        MR. MARYE:  Do you want me to talk about the

9 other cases any further?

10        THE COURT:  Well, if you think this case is

11 comparable to those other cases warranting a variance

12 of the nature that you've suggested, then it would be

13 important for the Court to have that information;

14 wouldn't you agree?

15        MR. MARYE:  Yes, sir.  I suppose the *Collins*

16 case, in that he did travel to meet with a undercover

17 law enforcement officer who was posing as the mother

18 of two minor daughters and supposedly was making the

19 minor daughter available, and had it not been law

20 enforcement, I do believe he would have gone forward

21 with --

22        THE COURT:  So we didn't have an actual

23 victim there; we had a law enforcement officer posing

24 as a victim?

25        MR. MARYE:  That's correct.  And then the --

1  the *Solomon Blue Waters* case, there was an actual

2  victim, and he did in fact travel from a foreign

3  country here to the United States.  And he did have

4  substantial mental health, emotional problems as well,

5  had in fact attempted suicide when he was, I believe,

6  17 or 18 in the United Kingdom.

7  　　　　And, of course, in that case, one of the

8  concerns, I guess, was did not want to make the

9  victim, who was a known victim, of course, in eastern

10  Kentucky have to go through a trial.  So that was part

11  of, I think, the rationale that we did in terms of

12  making the binding plea agreement offer to that

13  particular defendant.

14  　　　　That being said, Judge, as I said, I felt

15  that this particular defendant should have a very

16  substantial period of supervised release in order to

17  monitor him whenever he is released from prison, and

18  that whatever sentence the Court imposes, of course,

19  the United States respects and believes that whatever

20  sentence the Court decides to impose is -- would be

21  appropriate.

22  　　　　Certainly, a guideline sentence is

23  appropriate.  The United States had agreed that we

24  would not seek a sentence substantially higher than

25  the bottom end of the guidelines calculation based on

1    that mistake that I made in not catching that

2    particular guideline calculation, which is what I --

3    in a number of other cases in which I have failed to

4    catch a guideline calculation that probation office

5    has determined applies, and I agreed that they are

6    correct, and that that was my mistake or my failure to

7    catch that.  Thank you, Judge.

8              THE COURT:  Okay.  Anything else?

9              MR. MARYE:  No.  Thank you, Your Honor.

10             THE COURT:  Mr. Murphy.

11             MR. MURPHY:  Nothing further, Your Honor.

12             THE COURT:  All right.  With respect to the

13   issue that I've questioned counsel for the United

14   States about, let me just point out a couple of

15   decisions in some cases that bear the point that I'm

16   trying to make.

17             And the first case I'll cite is one, I

18   believe, written by Judge Sutton.  A couple of these

19   are non-binding -- or, I'm sorry, not published.  This

20   one happens to be the *Poynter* case.  I believe this

21   was a case from Judge Coffman's Court in which imposed

22   a substantial upward variance from the guideline range

23   of 188 to 235 up to 720 months for a child offender.

24   And that case was reversed and remanded based upon the

25   significance of the upward variance.

1          But in decide -- or in discussing this
2   particular Section 3553(a)(6), Judge Sutton notes --
3   he's citing the *Rita* case -- one of the principle
4   functions of the Sentencing Reform Act of 1984 was to
5   eliminate "unwarranted sentencing disparities among
6   defendants with similar records who've been found
7   guilty of similar conduct."
8          District court judges cannot correct the
9   problem within their circuit or even within their own
10  court so long as two or more judges sit there, much
11  less nationwide, because different judges and others
12  can differ on how to best reconcile the disparate ends
13  of punishment.
14         The point being, that if we have, let's say,
15  as an example, two judges within the district, is the
16  second judge bound on a particular issue once the
17  first judge decides the issue, and once the first
18  judge perhaps decides that either an upward variance
19  or a downward variance would be appropriate, does that
20  then set the standard, or as I sometimes refer, when
21  these arguments are incorrectly made in this court,
22  does it establish the lowest common denominator?  It
23  does not.
24         There are a couple of other decisions that I
25  will cite for the parties' reference.  One, I believe,

is *Brewer,* which is a 2009 decision, 332 Federal
Appendix 296, written by Judge Lioi sitting by
designation at the Sixth Circuit.  She states that,
Section 3553(a)(6) is concerned with nation -- or
national sentencing -- I'm sorry -- national
disparities among the many defendants with similar
backgrounds convicted of similar criminal conduct.

    And then she notes that, "While a district
court in its discretion consider local disparities to
be relevant, the need is to avoid nationwide
sentencing disparities under Section 3553(a)(6).
Again, it concerns nationwide disparities, and not
disparities within specific cases."  She's citing the
*Houston* case there.

    "Does not focus on perceived disparities
between any two defendants, even if those defendants
happen to be co-defendants implicated in the same
criminal activity.  Instead, the section is there to
ensure nationally uniform sentences among like
offenders so as to leave room to depart downward for
those defendants who are truly deserving of leniency.

    Generally, nationwide uniformity is taken
into account by the sentencing guidelines, which are
almost certainly the best indication of ordinary
practice, since most sentences are within the

1  guidelines."

2       The case I'd cited earlier, the *Vincent* case,

3  the citation is 495 F.3d 349.

4       And then I would also cite for the parties'

5  reference *Simmons*, which appears at 501 F.3d 620, a

6  2007 decision.  I believe that was -- I believe that

7  was a decision by Judge Kennedy.  But she cites the

8  same concerns and gives the same explanation as Judge

9  Lioi had given a couple of years later, and she cites

10 all the circuit courts that have followed that

11 position.  And I think at that time, all the circuits

12 were uniform in that approach with perhaps two that

13 had not been cited.  I believe the Eleventh and

14 perhaps one other circuit, the federal circuit had not

15 been cited as taking that position.

16      So the Court does reject the United States'

17 argument outlined in the sentencing memorandum that

18 under 3553(a)(6); it's outlined at page 4 of the

19 sentencing memorandum, that these cases from within

20 the district should be considered to avoid sentencing

21 disparities among defendants with similar records

22 who've have been found guilty of similar conduct.  And

23 likewise, based upon the little bit of information

24 that this Court has received, those cases that are

25 cited by the government would not be similar cases;

1  they're not defendants convicted of similar conduct.

2        When we look at the guideline ranges, they

3  would indicate that there were not the enhancements

4  applied in those cases that had been applied in this

5  case.  This defendant has a total offense level of 37.

6  These other ranges, at least as the Court is able to

7  determine based upon the plea agreements that were

8  tendered in those cases, without looking at the

9  presentence reports; they haven't been provided to me,

10  other than the *Cantrell* case, those ranges would be

11  significantly lower.  And two of those cases were

12  mandatory minimums that were imposed.  One case was a

13  binding plea agreement, an 11(c)(1)(C) plea agreement.

14  And then in the other case, the -- that I am aware

15  of -- the sentence was within the guideline range.

16        So I'm not aware of in any of those cases in

17  which a variance or a significant variance was

18  imposed.  Instead, a guideline sentence, it does

19  appear, either was imposed, or a binding plea was

20  entered and followed by the Court.  So this case --

21  those cases that have been cited would not be a reason

22  for this Court to vary downward.

23        The Court begins the analysis in imposing a

24  sentence from considering the properly calculated

25  guideline range.  I am subject to the mandatory

1  minimum term of 120 months, but the guideline range

2  itself is not binding.  However, the Court, in

3  considering the factors of 3553, does not find any

4  reason that would justify a departure below the

5  guideline range.  Instead, the concerns that I have in

6  this particular matter, based upon the undisputed

7  facts of the case, support a sentence, and would call

8  for a sentence at the upper end of the guideline

9  range, if not a variance above the guideline range.

10       When we look at the nature and circumstances

11  of the offense, they're very serious.  Not only was

12  this defendant encouraging very young girls to send

13  images of themselves, but there was conversations,

14  online conversations about encouraging bestiality with

15  these young women.

16       This defendant's history and characteristics

17  do have a couple of positive characteristics.  He has

18  been caring for his mother.  He has some employment.

19       At the same time, when we look at his

20  educational history, he had serious problems in school

21  as he's described and as further discussed in the

22  evaluation, the competency evaluation that was

23  submitted -- and was prepared and submitted in this

24  case.  And as I've indicated, he has some mental

25  health issues; I'm not going to go into all of those

1  issues, but there are serious concerns going forward

2  in terms of the issue of protecting the public.  And

3  as reflected at page 8 of that competency evaluation,

4  the report indicates those problems are not likely to

5  be resolved in the near future or in the future.

6          We look at the seriousness of the offense.

7  Once again, a very serious offense.  The statements

8  that were made by this defendant to these young women

9  cause me some -- certainly some concern.  These were

10 not law enforcement officers pretending to be young

11 women.  These were young women as young as 13 years

12 old, and this defendant was certainly aware of that.

13         A sentence within the guideline range would

14 promote respect for the law and would provide for a

15 just punishment for the offense.  It will provide a

16 measure of deterrence.

17         But I am concerned going forward that

18 regardless of the length of the sentence, that a

19 danger is presented to this -- from this defendant.  I

20 believe that a sentence within the guideline range

21 would also provide deterrence to others that might be

22 inclined to engage in similar conduct.

23         I keep coming back to the issue of protection

24 of the public, and that does certainly concern me.

25 While the term of supervision that will be imposed in

1  this case will include the standard conditions that
2  this Court typically would impose, it's not a
3  fail-safe, and it does not guarantee protection of the
4  public, especially if an individual has some history
5  of mental health concerns, as this defendant does.
6          I will recommend treatment in order to
7  address issues of 3553(a)(2)(D), the need to provide
8  the defendant with needed educational or vocational
9  training, medical care or other corrective treatment
10 in the most effective manner.
11         And then again, looking at the factor of
12 unwarranted sentencing disparities, a sentence within
13 the guideline range would not constitute an
14 unwarranted sentencing disparity.
15         When we look at the specific information in
16 the report, the offense conduct section of the report,
17 in terms of this defendant's interaction with victims,
18 and when we look at his history and characteristics in
19 dealing with teen-aged boys in the case, and the
20 threats that he was making to these other individuals
21 that were not necessarily victims in the case, but
22 they do shed some light on this defendant's history
23 and characteristics.
24         When we look at all of those conditions,
25 while I believe the Court certainly would be justified

in imposing a variance upward, determined in this
particular case that a sentence at the top of the
guideline range will be minimally sufficient and not
greater than necessary to meet all of the purposes of
Title 18, Section 3553, and, therefore, the Court will
deny the request for a variance that has been joined
in by the United States.

This Court's duty is not to try to correct
errors that counsel may have made in making an
estimation as to a guideline range.  That's for
counsel to do in the future, and should not allow
mistakes then to attempt to alter an appropriate
sentence in the case by converting essentially a
non-binding guideline -- I'm sorry -- a non-binding
plea agreement into what counsel would -- what I would
call would be a soft-binding plea agreement.

This Court made it clear at the time that the
plea was entered that the recommendations were just
that; they were only recommendations, and would not be
binding on the Court.

I'll announce the sentence at this time.  It
will be the sentence of the Court pursuant to the
Sentencing Reform Act of 1984, as modified by the
decisions in *Booker* and *Fanfan*, and I, again, I do
believe that the following sentence would be

1  sufficient, but not greater than necessary, to meet

2  the purposes of Title 18, Section 3553(a).

3         And, therefore, it will be the judgment of

4  the Court that the defendant James Matthew Shelton

5  will be committed to the custody of the Bureau of

6  Prisons for a term of 262 months.

7         It will be recommended during the term of

8  incarceration that he participate in a job skills and

9  vocational training program.  Also, that he

10  participate in a sex offender treatment program.  And

11  that he participate in a mental health treatment

12  program.

13         Upon release, he'll be placed upon

14  supervision for a term of life.

15         Within 72 hours of release from the custody

16  of the Bureau of Prisons, he shall report in person to

17  the probation office in the district into which he is

18  released.

19         While on supervised release, he must not

20  commit another federal, state or local crime.  He must

21  comply with the mandatory and the standard conditions

22  that will be set forth in the judgment and the

23  commitment order, and he must comply with the

24  following additional conditions, and they include that

25  he not possess a firearm, destructive device,

1  ammunition or dangerous weapon.

2        I'm also going to impose a search condition

3  based upon my concerns that this defendant does

4  present a risk to others in the public.

5        He'll be required to submit his person,

6  residence, curtilage, office or vehicle to a search,

7  and that would be at the direction and discretion of

8  the probation office.

9        The drug testing conditions ordinarily

10  required by Title 18, Section 3553(a)(5) and

11  3563(a)(5) will be suspended based upon my

12  determination that this defendant, Mr. Shelton, does

13  not present a risk of future substance abuse.

14        He'll also be required to comply with the

15  following special conditions.  And they include that

16  he attend and successfully complete any mental health

17  diagnostic evaluations and treatment or counseling as

18  directed by the probation office.

19        He must pay the cost of treatment services,

20  to the extent that he's able to do so as determined by

21  the probation office.

22        I will impose the sex offender conditions,

23  and I believe both of the attorneys have indicated

24  their belief that these conditions are all appropriate

25  in this particular matter.  They include that

1  Mr. Shelton participate in a program for treatment of

2  mental health and sexual disorders.

3       He'll be required to undergo a sex offender

4  risk assessment, psychosexual evaluation, and/or other

5  evaluation, as needed.

6       Be subject to periodic polygraph examinations

7  and computer voice stress analysis testing.  That

8  would be at the discretion and the direction of the

9  probation office.

10       He must follow the rules and regulations of

11  the sex offender treatment program as implicated by

12  the probation office.

13       His residence and employment must be

14  preapproved by the probation office and in compliance

15  with state and local law.

16       He may not frequent, volunteer or work at

17  places where children under the age of 18 congregate;

18  and that would include playgrounds, parks, day care

19  facilities, public swimming pools, youth centers and

20  video arcades, and similar facilities, unless approved

21  by the probation officer.  And he may have no contact

22  with any identified victims or the male individuals

23  that are listed -- that are referred to by initials in

24  the presentence report.

25       He must not associate or have any verbal,

1  written, telephonic or electronic communication with

2  any person under the age of 18, without permission of

3  the probation office.  This would not include

4  individuals under the age of 18, such as ticket

5  vendors, cashiers, waitresses and the like with whom

6  he must deal in order to obtain ordinary and usual

7  commercial services.

8           He shall not possess, view, listen to or go

9  to locations where any form of pornography,

10 sexually-stimulating performances or sexually-oriented

11 materials, items or services are available.

12          He may not possess or use a device capable of

13 creating pictures or videos without the approval of

14 the probation office.

15          He may not rent or use a post office box or

16 storage facility without the approval of the

17 probation.

18          He must register as a sex offender as

19 prescribed by state law.

20          There will be computer restrictions, and that

21 is he may not possess or use a computer with any

22 device, or any device with access to any online

23 computer service at any location, and that would

24 include place of employment, without the prior written

25 approval of the probation office.  And this includes

1 any Internet service provider, bulletin board system

2 or any other public or private network or email

3 system.

4        He must consent to the probation office

5 conducting an announced examination of his computer

6 systems and any internal or external storage devices,

7 which may include retrieval and copying of any and all

8 memory from the hardware and software, and the removal

9 of such systems for the purpose of conducting a more

10 thorough inspection of his computer, or to prevent

11 access to certain materials.

12        And he must consent to periodic inspection of

13 any installed hardware and software to ensure that

14 it's functioning properly.

15        He must provide the probation office with

16 accurate information about his entire computer system,

17 and that would include hardware and software

18 components, and any external or internal storage

19 device.

20        He must also provide all passwords used by

21 him, and he must abide by the rules of the computer

22 restriction monitoring program adopted by this

23 district.

24        As indicated, there will be a search

25 component, and he'll be subject to search, as I've

1  outlined earlier.

2         He'll also be required to provide financial
3  information to the probation office.  He must provide
4  the office with access to any requested financial
5  information.  And that condition is included as a
6  means to allow the probation office to monitor
7  purchases of electronics and peripheral devices, as
8  well as any Internet service or other service
9  subscribed to or accessed by the defendant.  And that
10  would include the amount paid for Internet services,
11  if it exceeds the amount allowed by probation office
12  if in fact it is allowed, and that -- and whether he's
13  purchased more electronic devices than he claims to
14  possess at the time.

15         Based on the representations of the United
16  States that there are no claims for restitution, the
17  Court will not defer determination of restitution in
18  this particular matter.

19         And based upon the defendant's current
20  financial situation, the Court will waive the fine
21  requirement in the case, but he will be required to
22  pay the special assessment of $100 that will be due
23  immediately.

24         And the judgment will also reflect forfeiture
25  of the items listed in the forfeiture allegation of

the indictment, and that, I believe, includes a
Samsung cellular telephone, as well as what's referred
to as peripheral and software relating to a computer
and to the cellphone.  That will be included in the
judgment as well.

The defendant will be remanded to the custody
of the United States Marshal following this hearing.

Because I've recommended sex offender
treatment in this particular matter, I will not be
making a recommendation as to placement for service of
the sentence.  I do instead recommend that he receive
sex offender treatment, and also treatment for mental
health conditions that are referenced in the report
and were thoroughly outlined in the competency
evaluation performed previously by the Bureau of
Prisons.

The defendant reserved his right to appeal
the sentence, and, therefore, in just a moment, I will
ask the clerk to advise him of that right of appeal.

Before I do so, I will entertain any
objections that the attorneys have, first, to the
sentence that has been announced, including conditions
of supervised release.  Second, any objections under
*United States V. Bostick*.  And third, I'll entertain
any request for additional findings.

1          Mr. Marie, I'll begin with you.

2          MR. MARYE:  Your Honor, the United States has

3     no objections to the sentence imposed, including the

4     supervised release conditions, no objections under

5     *Bostick,* and no request for any additional findings.

6          THE COURT:  Okay.  Thank you.  Mr. Murphy.

7          MR. MURPHY:  No *Bostick* issues, Your Honor,

8     and no -- no request for further findings.

9          I would just like to comment, and this is not

10    really an objection, but the one condition that I

11    always found in these cases that, to me, would be

12    impossible to follow would be restriction in going to

13    locations where pornography to be present, and because

14    that would -- that would ban someone from a public

15    library.  That would ban someone from going into

16    anybody's home who has a computer who could access

17    pornography.  It would ban you from going into gas

18    stations which keep pornographic magazines under the

19    counter where that they could be purchased.  And I

20    don't know how a person can really comply with all

21    that because in our society, unfortunately,

22    pornography is everywhere almost.

23         THE COURT:  All right.  Well, I've --

24         MR. MURPHY:  I just wondered if that could be

25    amended to maybe that he could go to those places

1    where pornography could be present with permission of

2    the probation office, such as a public library, for

3    instance.

4           THE COURT:  I will modify to include a

5    condition that the probation office may provide some

6    latitude and allow him to attend places where there

7    may be pornography present, if there's some assurance

8    that the probation office may receive that he would

9    not be accessing that information at those locations,

10   such as gas stations, public libraries and the like.

11          MR. MURPHY:  All right.  That would allay my

12   concern.  Thank you.  But otherwise, no objections.

13          THE COURT:  All right.  Thank you.  Madam

14   Clerk.

15          DEPUTY CLERK:  You are notified by this Court

16   that you have a right to appeal your case to the Sixth

17   Circuit Court of Appeals, which on proper appeal will

18   review this case and determine that there has or has

19   not been an error of law.

20          The defendant may waive those rights as part

21   of his plea agreement, and you have entered into a

22   plea agreement which waives some or all of your rights

23   to appeal the conviction.  Such waivers are generally

24   enforceable, but if you believe the waiver is

25   unenforceable, you can present that theory to the

1 appellate court.

2        If you're unable to pay for the cost of the
3 appeal, you have a right to apply for leave to appeal
4 informa pauperis, which means you may appeal without
5 paying for it.

6        If you are without the services of an
7 attorney and desire to appeal, upon request, the clerk
8 of this court shall prepare and file forthwith a
9 notice of appeal on your behalf.

10        With exceptions, this notice of appeal must
11 be filed within 14 days from the date of entry of the
12 judgment.

13        If you do not have sufficient funds to employ
14 an attorney, the Court of Appeals may appoint your
15 present attorney or another to prosecute the appeal
16 for you.

17        You may request to be released on a
18 reasonable bond pending appeal.

19        THE COURT:  Thank you.  Mr. Shelton, you're
20 being given what was just read.  Please take a moment,
21 review your rights of appeal with counsel.  After
22 you've done so, if you could sign the document; and
23 there's one copy that you can keep.

24        The supplement to the plea agreement was
25 previously tendered to the Court.  It's being returned

1    to the United States to maintain in its records at

2    this time.

3              Thank you.  If there's nothing else to be

4    taken up in the case, we'll be in recess until 11:00.

5              [END OF PROCEEDINGS - 10:47 a.m.]

6                        * * * * *

7              I certify that the foregoing is a correct

8    transcript from the record of proceedings in the

9    above-entitled matter.

10

11              */s/ Sandra L. Wilder*

12              SANDRA L. WILDER, RMR, CRR,

13              COURT REPORTER      Date:  03/07/2017

14

15

16

17

18

19

20

21

22

23

24

25