UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

```
UNITED STATES OF AMERICA,     ) Lexington Criminal
                              ) Action Number 16-03
        Plaintiff,            )
                              ) At Lexington, Kentucky
-vs-                          )
                              ) August 22, 2016
JAMES MATTHEW SHELTON,        ) 10:30 a.m.
                              )
        Defendant.            )
```

TRANSCRIPT OF REARRAIGNMENT HEARING PROCEEDINGS
BEFORE THE HONORABLE DANNY C. REEVES
UNITED STATES DISTRICT JUDGE

Appearances of Counsel:

On behalf of Plaintiff:      DAVID A. MARYE, ESQ.
                             Assistant U.S. Attorney
                             260 West Vine Street
                             Suite 300
                             Lexington, Kentucky  40507

On behalf of Defendant:      R. MICHAEL MURPHY, ESQ.
                             709 Millpond Road
                             Lexington, Kentucky  40514

Court Reporter:              PEGGY W. WEBER, RPR
                             Official Court Reporter
                             U.S. District Court
                             P.O. Box 362
                             Lexington, Kentucky  40588
                             (859) 421-0814

Proceedings recorded by mechanical stenography,
transcript produced by computer.

1            (Whereupon, the Rearraignment Hearing proceedings

2     commenced on Monday, August 22, 2016, at 10:30 a.m., on

3     the record in open court, as follows.)

4               THE COURT:  Thank you.

5               Madam Clerk, if you would call the matter

6     scheduled for 11 o'clock, please.

7               THE CLERK:  Yes, Your Honor.

8               Lexington Criminal Action Number 16-03,

9     United States of America versus James Matthew Shelton,

10    called for rearraignment.

11              THE COURT:  Thank you.

12              If counsel could state their appearances,

13    please.

14              Mr. Marye.

15              MR. MARYE:  Yes, Your Honor.  Good morning.

16              David Marye on behalf of the United States.

17              THE COURT:  Thank you.

18              Mr. Murphy.

19              MR. MURPHY:  Good morning, Your Honor.

20              Michael Murphy on behalf of James Matthew

21    Shelton, seated here at the defense table.

22              THE COURT:  All right.  Thank you.

23              Mr. Murphy, this matter is scheduled to be

24    called at 11 o'clock.  The attorney that was to be here

25    at 10 o'clock this morning is running late.  So we're

1    going to go ahead and call this matter early if

2    Mr. Shelton is prepared to proceed.

3              MR. MURPHY:  He is, Your Honor.  I had a chance

4    to explain that to him, and he's ready to go.

5              THE COURT:  All right.  Thank you.

6              Madam Clerk, if you could please administer the

7    oath to Mr. Shelton to answer questions.

8              THE CLERK:  Yes, Your Honor.

9              Could you please stand and raise your right

10   hand?

11             Subject to the penalties of perjury, do you

12   swear or affirm to tell the truth, the whole truth, and

13   nothing but the truth?

14             Do you so swear or affirm?

15             DEFENDANT SHELTON:  Yes.

16             THE COURT:  Thank you, and you can be seated.

17             Mr. Shelton, would you state your full name,

18   please?

19             DEFENDANT SHELTON:  James Matthew Shelton.

20             THE COURT:  Mr. Shelton, as we proceed here

21   this morning, let me first remind you that, of course,

22   you've just been placed under oath by the clerk.

23             And as a result, the answers that you give to

24   the questions I'll be asking you must be truthful.

25             I do need to remind you that if you should fail

1    to give truthful answers, you could be prosecuted for

2    perjury or making a false statement to the Court.

3            And you do understand that; correct?

4            DEFENDANT SHELTON:  Yes, sir.

5            THE COURT:  The way we'll proceed this morning

6    is I'm going to begin by asking you several questions to

7    confirm that you are competent and able to enter a guilty

8    plea in the case.

9            Also, I would like to discuss with you some of

10   the rights that you're giving up by entering a guilty

11   plea today rather than proceeding to a jury trial.

12           Also, I'd like to discuss some of the factors

13   that the Court would consider in imposing a sentence in

14   your case.

15           If at any point you feel like you don't

16   understand one of my questions, stop me and tell me

17   that.

18           DEFENDANT SHELTON:  Okay.

19           THE COURT:  If you'll do that, I'll repeat or

20   rephrase the question.  If you don't, I'll assume you

21   understand what I'm asking.

22           DEFENDANT SHELTON:  Okay.

23           THE COURT:  Will you do that?

24           DEFENDANT SHELTON:  Yes.

25           THE COURT:  All right.  Mr. Shelton, how old

 1   are you?

 2              DEFENDANT SHELTON:  30.

 3              THE COURT:  How much education do you have?

 4              DEFENDANT SHELTON:  I graduated in -- well, I

 5   didn't graduate.  I made it to the 10th, but I went and

 6   got my GED.

 7              THE COURT:  All right.  Do you recall what year

 8   you got your GED?

 9              DEFENDANT SHELTON:  2008.

10              THE COURT:  2008.  How long were you out of

11   school before you got your GED?

12              DEFENDANT SHELTON:  Roughly four years.

13              THE COURT:  And what was your reason for not

14   finishing high school?

15              DEFENDANT SHELTON:  Well, I ended up dropping

16   out because my mother needed heart surgery and needed

17   somebody at the house to help her out so I dropped out

18   and stayed with her for a little while.

19              THE COURT:  All right.  You weren't failing

20   classes or anything of that nature?

21              DEFENDANT SHELTON:  No.

22              THE COURT:  Were you ever held back in class?

23              DEFENDANT SHELTON:  No.

24              THE COURT:  All right.  And you're obviously

25   able to read and write; correct?

1          DEFENDANT SHELTON:  Right, right.

2          THE COURT:  All right.  Are you currently

3  receiving any medical treatment or treatment for any

4  mental health issues?

5          DEFENDANT SHELTON:  No, sir.

6          THE COURT:  Have you ever been treated or

7  hospitalized for any type of a mental illness or a mental

8  condition?

9          DEFENDANT SHELTON:  Not hospitalized; treated,

10  yes.

11          THE COURT:  All right.  And you were referred

12  for a study in this case; is that correct?

13          DEFENDANT SHELTON:  Right.

14          THE COURT:  Is that the only evaluation that

15  you've received for any type of a mental health issue?

16          DEFENDANT SHELTON:  Yes.

17          THE COURT:  All right.  And you've had the

18  opportunity to review that evaluation and that report

19  with your attorney; is that correct?

20          DEFENDANT SHELTON:  Right.

21          THE COURT:  All right.  Have you ever been

22  treated or hospitalized for addiction to drugs or

23  alcohol?

24          DEFENDANT SHELTON:  No, sir.

25          THE COURT:  Have you ever been diagnosed as

1    having any type of a mental health condition, and that

2    could include anxiety or depression?

3                DEFENDANT SHELTON:  Yes.

4                THE COURT:  And when was that?

5                DEFENDANT SHELTON:  Between 2003 and 2005.

6                THE COURT:  Do you recall the condition that

7    you were diagnosed as having?

8                DEFENDANT SHELTON:  Bipolar disorder.

9                THE COURT:  Bipolar.  As I recall, you were

10   given some medications for that --

11               DEFENDANT SHELTON:  Right.

12               THE COURT:  -- condition; is that correct?

13               DEFENDANT SHELTON:  Yes, sir.

14               THE COURT:  You took those medications for some

15   period of time; isn't that also correct?

16               DEFENDANT SHELTON:  Yes, sir.

17               THE COURT:  And you stopped taking those

18   medications?

19               DEFENDANT SHELTON:  Right.

20               THE COURT:  Have you noticed a change in your

21   behavior since you stopped taking the medications?

22               DEFENDANT SHELTON:  No.

23               THE COURT:  Do you feel like that the fact that

24   you stopped taking those medications has affected your

25   ability to understand or to reason with people?

1              DEFENDANT SHELTON:  No.

2              THE COURT:  All right.  And are you under the

3  influence of any type of drugs or alcohol at the present

4  time?

5              DEFENDANT SHELTON:  No, sir.

6              THE COURT:  Do you take any type of

7  prescription medicines?

8              DEFENDANT SHELTON:  No, none.

9              THE COURT:  And have you had regular employment

10  in the past?

11              DEFENDANT SHELTON:  Yes.

12              THE COURT:  Can you tell me generally the kind

13  of work you've done?

14              DEFENDANT SHELTON:  Mainly nursing home work in

15  the kitchens.

16              THE COURT:  All right.  All right.  Thank you.

17              Let me ask Mr. Murphy just a couple of

18  questions.

19              Mr. Murphy, have you had any problems

20  communicating with Mr. Shelton in this case?

21              MR. MURPHY:  I have not, Your Honor.

22              THE COURT:  Do you have any reason to believe

23  that he doesn't understand the nature of the charges that

24  have been made against him?

25              MR. MURPHY:  I do not, Your Honor.  The reason

1   I filed the motion for the study is because of his past

2   history.  I had some concerns there.  It was very

3   serious case with penalties that are potentially very

4   high.  I wanted to make sure that he was solid before

5   we proceeded any further, but I'm satisfied that he is

6   now.

7                THE COURT:  All right.  And do you have any

8   reason to believe that he doesn't -- again, that he

9   doesn't understand the charges or that he's impaired?

10  You said you don't think that there's any problem now.

11               MR. MURPHY:  No, I do not.

12               THE COURT:  All right.

13               MR. MURPHY:  I'm convinced that there is not a

14  problem.

15               THE COURT:  All right.  Thank you.

16               Mr. Shelton, let me confirm that you've

17  received a copy of the indictment in the case.  Is that

18  correct?

19               DEFENDANT SHELTON:  Yes, sir, I have.

20               THE COURT:  Have you had the opportunity to

21  review the indictment and to discuss it with Mr. Murphy,

22  your attorney?

23               DEFENDANT SHELTON:  Yes, sir.

24               THE COURT:  Have you discussed not only the

25  specific charges against you but the case in general with

1    Mr. Murphy?

2              DEFENDANT SHELTON:  Yeah, we've discussed it.

3              THE COURT:  All right.  And do you believe you

4    understand the charges?

5              DEFENDANT SHELTON:  Yes, sir.

6              THE COURT:  Are you satisfied with the advice

7    and the representation that Mr. Murphy has given you to

8    this point in the case?

9              DEFENDANT SHELTON:  Yes, sir.

10             THE COURT:  And is there a written plea

11   agreement?

12             Mr. Marye, do you have that, or Mr. Murphy?

13             MR. MARYE:  Yes, Mr. Murphy.

14             THE COURT:  If I could ask you to pass that up,

15   please.

16             Mr. Shelton, I have been given your written

17   plea agreement.  It's an eight-page document.  On the

18   seventh and eighth pages it has the attorneys'

19   signatures.  It also appears to have your signature dated

20   today, and those same signatures appear on the supplement

21   to the plea agreement.

22             And, again, it does appear that you signed this

23   supplement this morning, the final documents.  Or these

24   are the final documents.

25             Let me confirm that this is not only your

1  signature on these documents, but you signed these

2  documents this morning.

3          DEFENDANT SHELTON:  Yes, sir, I did.

4          THE COURT:  Is that correct?

5          DEFENDANT SHELTON:  Yes.

6          THE COURT:  Before signing these documents, did

7  you have the opportunity to review each one?

8          DEFENDANT SHELTON:  Yes.

9          THE COURT:  And did you discuss the documents

10 with your attorney?

11         DEFENDANT SHELTON:  Yes, sir.

12         THE COURT:  Do you feel like you understand the

13 terms and the conditions of your plea agreement and also

14 the supplement to your plea agreement?

15         DEFENDANT SHELTON:  Yes, sir.

16         THE COURT:  And if I take these two documents

17 together, the plea agreement and the supplement, do they

18 represent the only agreement that you have with the

19 government in the case?

20         DEFENDANT SHELTON:  I'm not sure.

21         THE COURT:  All right.  In other words, what

22 I'm asking you, or what I'm trying to determine, is

23 whether there is some side agreement that you might have

24 with the government.

25         So my question is whether these two documents,

1  the plea agreement and the supplement, represent the only

2  agreement that you have with the government.

3            DEFENDANT SHELTON:  I guess.

4            THE COURT:  This details all the terms and

5  conditions --

6            DEFENDANT SHELTON:  Right.

7            THE COURT:  -- of your plea agreement?

8            All right.  Thank you.

9            Other than what's contained in your plea

10 agreement and the supplement to the plea agreement, has

11 anyone else made any promises to you that have caused you

12 either to sign these documents or to indicate that you

13 wish to enter a guilty plea in the case?

14           DEFENDANT SHELTON:  No, sir.

15           THE COURT:  All right.  So the government

16 hasn't made any other promises or representations and

17 neither has any third party?

18           DEFENDANT SHELTON:  Right.

19           THE COURT:  All right.  Now, Mr. Shelton, at

20 this time what I'm going to do is I'm going to ask

21 Mr. Marye on behalf of the government to review the

22 essential terms of your plea agreement.  I'm not going to

23 ask him to read this line by line, and I'm not going to

24 ask him to summarize the supplement.  I've had a chance

25 to look at that.

 1                   I'm going to ask him, however, to summarize the

 2      general terms of the plea agreement.  And as he does

 3      that, I would like for you to listen carefully.

 4                   After he's finished, I'm going to ask

 5      Mr. Murphy, and then I'll ask you if he's accurately

 6      summarized that document.

 7                   So if you could, please listen carefully as he

 8      does that.

 9                   Mr. Marye.

10                   MR. MARYE:  Yes, Your Honor.

11                   Pursuant to this plea agreement, Mr. Shelton

12      will plead guilty to Count 2 of the indictment, which

13      charges him with using a means and facility of interstate

14      commerce to knowingly persuade, induce, entice, and

15      coerce an individual under the age of 18 years to engage

16      in sexual activity, for which any person could be charged

17      with a criminal offense.  It's what's often referred to

18      as online enticement.

19                   The United States has agreed to move the Court

20      to dismiss Counts 1 and 3 at the time of sentencing.

21                   And he has also agreed to admit to the

22      forfeiture allegation in the indictment.

23                   Paragraph 2 we set out what are the essential

24      elements of the offense.

25                   And in paragraph 3, we've set out facts that

1    the U.S. can prove beyond a reasonable doubt, and

2    those essential -- and those facts establish the

3    essential elements of the offense to which he's pleading

4    guilty.

5              Paragraph 4 sets out the statutory punishment.

6              And in paragraph 5, the parties have set out

7    what we believe to be the applicable sentencing

8    guidelines, but we recognize that this is only a

9    recommendation, which does not bind this Court.

10             There's no agreement as to what his criminal

11   history category will be.

12             And in paragraph 7, he's agreed to not file a

13   motion for a decrease in the offense level based on a

14   mitigating role.

15             And in paragraph 8, Mr. Shelton has waived the

16   right to appeal the guilty plea and the conviction,

17   except for claims of ineffective assistance of counsel.

18             He also waives the right to attack collaterally

19   the guilty plea, conviction, and sentence.

20             Paragraph 9 talks about he understands that he

21   will be required to register as a sex offender upon

22   completion of his imprisonment.

23             And those are the essential terms of the plea

24   agreement, Your Honor.

25             THE COURT:  All right.  Thank you, Mr. Marye.

1              Oh, Mr. Marye, I did notice that in the

2   recommended guideline calculations there's a reference

3   to applying the 2015 edition of the guideline manual.

4   In all likelihood if the case is sentenced after

5   November 1st of this year, then the 2016 edition to the

6   manual would apply provided that those provisions were

7   not any more onerous than the '15 edition of the manual.

8              And you do understand that in this case?

9              MR. MARYE:  Yes, Your Honor.  And I certainly

10  have no objection.  Obviously, if it's to his detriment,

11  then it would not, but if it's to his benefit, then, I

12  guess, that would be fine with him.  I'm sure --

13             THE COURT:  Yes.

14             MR. MARYE:  -- that is -- that's fine with the

15  U.S.

16             THE COURT:  Yes, sir.

17             MR. MARYE:  Thank you, Judge.

18             THE COURT:  All right.  Thank you.

19             And, Mr. Murphy, did Mr. Marye accurately

20  summarize the essential parts of the plea agreement?

21             MR. MURPHY:  Yes, he did, Your Honor.

22             THE COURT:  And, again, you understand that if

23  the 2016 edition of the guideline manual would be more

24  beneficial to Mr. Shelton, if he's sentenced after

25  November 1st, those more beneficial provisions would be

1    applied, but not if they were more onerous?

2              MR. MURPHY:  We understand that, Your Honor.

3    Even if it is one point, we will take it if we can get

4    it.

5              THE COURT:  All right.  Yes, sir.

6              Mr. Shelton, were you able to hear Mr. Marye as

7    he was going through your plea agreement?

8              DEFENDANT SHELTON:  Yes, sir.

9              THE COURT:  Did he accurately summarize it as

10   you understand it?

11             DEFENDANT SHELTON:  Yes, sir.

12             THE COURT:  Again, other than what's contained

13   in the plea agreement and the supplement, you told me

14   earlier that no one else has made any promises to you

15   that have caused you either to sign these documents or

16   to indicate that you wish to enter a guilty plea;

17   correct?

18             DEFENDANT SHELTON:  Right.

19             THE COURT:  All right.  And no one has made any

20   threats or in any way forced you to sign these documents,

21   or to enter a guilty plea.

22             Is that also correct?

23             DEFENDANT SHELTON:  That's correct.

24             THE COURT:  All right.  Let me -- Mr. Shelton,

25   let me make sure you understand that if I do accept a

1    plea of guilty from you pursuant to your plea agreement

2    you would be adjudged guilt of the charge that's

3    contained in Count 2 of the indictment, and you would

4    lose certain valuable civil rights that you have,

5    including the right to vote, the right to hold public

6    office, the right to serve on a jury, and also the right

7    to possess a firearm or any type of a dangerous weapon.

8           You do understand that, sir?

9           DEFENDANT SHELTON:  Yes, sir, I do.

10          THE COURT:  The statutory penalties are

11   accurately set forth in your plea agreement in

12   paragraph 4.

13          The maximum punishment that could be imposed in

14   this case would be -- would be a term of imprisonment for

15   not less than 10 years.  In other words, there's a

16   mandatory minimum term that the Court would be required

17   to apply by statute.

18          The maximum term of incarceration would be --

19   would be life under the statute, but it's not less than

20   10 years, no more than life, a fine of not more than

21   $250,000, and then there's a term of supervised release

22   that would be imposed as well.  That's also -- that also

23   carries a mandatory minimum period of five years.

24          Now, the Court could impose a longer period of

25   supervision.  Again, it could extend up to life, but it

1   would have to be at least five years by statute.

2            DEFENDANT SHELTON:  Right.

3            THE COURT:  Then there's a $100 special

4   assessment that would be applied, and pursuant to your

5   plea agreement that would be due at the time of entry of

6   your guilty plea.

7            Do you understand those are the maximum

8   penalties that could be imposed by law?

9            DEFENDANT SHELTON:  Yes, sir.

10           THE COURT:  Do you also understand that you

11  could receive additional penalties if you were to violate

12  any of the conditions of supervision that will be imposed

13  in your case?

14           The maximum period of incarceration for a

15  supervised release violation is not more than five years.

16  But if there were to be a violation, the Court could

17  reimpose supervision for the term that could have been

18  imposed originally.

19           DEFENDANT SHELTON:  Okay.

20           THE COURT:  Because the term of supervision can

21  extend up to life if there were to be a violation, the

22  Court could reimpose supervision for up to life.

23           DEFENDANT SHELTON:  Okay.

24           THE COURT:  Even if you -- for example, if you

25  only had five years of supervision originally --

1          DEFENDANT SHELTON:  Right.

2          THE COURT:  -- if there were a violation, the

3  Court would still have the option of imposing the term of

4  supervision that could have been imposed originally.

5          Do you understand that to be?

6          DEFENDANT SHELTON:  Yes, sir.

7          THE COURT:  All right.  Let me talk with you

8  for just a moment, Mr. Shelton, about the sentencing

9  guidelines and how they may be applied in your case.

10          I also want to talk with you about some

11  statutory factors that will be taken into account, but

12  first let me talk about the sentencing guidelines.

13          And let me -- let me begin my remarks about the

14  guidelines by pointing out that they're subject to the

15  statute.

16          So if the statute would require a mandatory

17  minimum term to be imposed, the Court can't go below

18  the statutory minimum term, absent certain exceptions.

19  And I'm sure you've talked with your attorney about

20  what some of those might be.  But the Court would be

21  bound by the statute unless there were a proper motion

22  made.

23          Now, understanding that to be the case, the

24  Court will also consider the sentencing guidelines.

25          The sentencing guidelines are based upon two

1    primary factors.

2            First is the offense level for the crime that

3    has been charged.

4            And second is any criminal history that you

5    might have.

6            Those two factors are taken together, and they

7    determine what's called a guideline range.

8            I find out about those factors, and also about

9    the guideline range, from a presentence report.  That's a

10   report that will be prepared by the probation officer in

11   your case.

12           After the report has been prepared, it will be

13   shown to you and to your attorney and also to the

14   attorney for the United States.

15           You will all have a chance to review the

16   report, and through your attorney, Mr. Murphy, you would

17   have a chance to file objections to anything that you

18   might disagree with.

19           DEFENDANT SHELTON:  Okay.

20           THE COURT:  I would need to resolve those

21   objections before we could proceed with the sentencing

22   hearing.

23           DEFENDANT SHELTON:  Okay.

24           THE COURT:  But do you understand that until

25   that process takes place, it would be impossible for the

21

1    Court, or for your attorney, to know exactly what your

2    guideline range would be?

3            You do understand that?

4            DEFENDANT SHELTON:  Yes, sir.

5            THE COURT:  Now, in addition to the sentencing

6    guidelines, Courts consider a number of statutory factors

7    in imposing sentences, and they're contained in Title 18

8    of the United States Code, Section 3553.

9            And they include factors such as the nature and

10   circumstances of the offense, the history and the

11   characteristics of the person that's being sentenced, the

12   need for the sentence to reflect the seriousness of the

13   offense, the need to promote respect for the law and

14   provide a just punishment for the offense.

15           The Court will also consider what's called the

16   deterrent affect that the sentence would have and whether

17   there's a need to protect the public from any future

18   crimes of the defendant.

19           Also, if a particular defendant needs any type

20   of educational or vocational training, any medical care

21   or treatment, or treatment for any addictions that might

22   be present, such as an addiction to drugs or alcohol,

23   those are all factors that can be taken into account, not

24   only in imposing the sentence but also in setting

25   conditions of supervision to follow.

1           You do understand that as well?

2           DEFENDANT SHELTON:  Yes, sir.

3           THE COURT:  Now, Mr. Shelton, there's some

4    waiver language that is contained in your plea agreement.

5    It's not unusual to have this in a plea agreement, but

6    any time it's present, I do need to review it with you.

7           And in your plea agreement the waiver language

8    is contained really in two paragraphs, paragraphs 7 and

9    8.  So let me take a few moment and go through each one

10   of these.

11          Paragraph 7 states that you've agreed that you

12   would not file a motion for a decrease in the offense

13   level.  Now, that's that calculation under the

14   guidelines.  We start with the offense level.

15          You agree that you would not file a motion for

16   a decrease in the offense level based on what's called a

17   mitigating role under the guidelines.  It's Section 3B1.2

18   of the sentencing guidelines.

19          And then in paragraph 8 there -- really there

20   are two parts of paragraph 8.  There's the part that

21   affects your ability to take a direct appeal, and then

22   there's the part that affects your ability to

23   collaterally attack the guilty plea, the conviction, and

24   the sentence.

25          Let's talk about direct appeals first.  In

23

1   paragraph 8 you've agreed that you would not file an

2   appeal.  You waived the right to appeal the guilty plea

3   and the conviction.

4           In other words, you couldn't take a direct

5   appeal to the Sixth Circuit to challenge those matters,

6   the guilty plea or the conviction.

7           But because this paragraph is silent about your

8   ability to appeal the sentence, you would have the -- you

9   would have the right to do that.

10          In other words, you could file a timely appeal

11  to challenge your sentence with the Sixth Circuit.  I

12  mention timely because you would have to file a notice of

13  appeal within 14 days of entry of the judgment before it

14  would be timely.  If you waited until after that time, it

15  would not be timely, and it would -- it would be subject

16  to being dismissed by the Sixth Circuit.

17          Now, the last part of paragraph 8 affects your

18  ability to collaterally attack the guilty plea, the

19  conviction, and the sentence.

20          When you give up the right to collaterally

21  attack something as it's used in this paragraph, it means

22  you're giving up the right to file a separate lawsuit to

23  challenge it.  Sometimes it's referred to as a habeas

24  motion or a habeas proceeding.

25          And with one exception you're giving up the

24

 1   right to collaterally attack the guilty plea, the

 2   conviction, and the sentence.  The exception is a claim

 3   of ineffective assistance of counsel.  You could still

 4   make that claim in a habeas proceeding, but that would be

 5   the only claim that you could make.  You would be limited

 6   to that claim.

 7            And you do understand that; correct?

 8            DEFENDANT SHELTON:  Yes, sir.

 9            THE COURT:  All right.  Now, as I've indicated,

10   you could appeal the sentence in the case, but ordinarily

11   you wouldn't be able to withdraw from your plea

12   agreement.

13            For example, if your attorney's prediction, or

14   your belief about your guideline range, if that were to

15   be incorrect, generally speaking that's not a reason to

16   seek to withdraw from the plea agreement.

17            Also, if the sentence that's imposed in your

18   case would be more severe than you expect, as long as it

19   were a legal sentence, generally that would not be a

20   reason to withdraw from the plea agreement.

21            Again, you could appeal the sentence, but

22   generally you couldn't withdraw from the plea agreement

23   for that reason.

24            Also, if you are sentenced to a term of

25   incarceration, you wouldn't be released on parole.

1    Parole has been abolished in the federal system.

2              Mr. Shelton, let me take a moment now, and I

3    would like to talk with you about some of the rights that

4    you're giving up by entering a guilty plea today rather

5    than proceeding to trial.

6              Now, let me first tell you that if you wanted

7    to continue with a plea of not guilty and proceed to

8    trial, you have every right to do so.

9              You have a right to a speedy, public trial, and

10   any verdict that would be returned would have to be a

11   unanimous decision of a jury composed of 12 persons.

12             But you can waive those rights, and you can

13   enter a guilty plea this morning if you choose to do so.

14             If you do, there's some rights that you give

15   up.

16             One right that you don't give up, however, is

17   your right to assistance of counsel.  You have that right

18   at all stages of this proceeding; and, again, you don't

19   lose that right by entering a plea of guilty.

20             You can hire an attorney.  If you can't afford

21   one, an attorney is provided to you.  Again, that right

22   of counsel extends throughout the course of the

23   proceeding.

24             But there are some rights that you do lose or

25   give up by not proceeding to trial.

1               For example, your right of confrontation.  By

2    not proceeding to trial, you wouldn't have the ability to

3    see, hear, or through your attorney cross-examine

4    witnesses that otherwise would be required to testify in

5    the case.

6               If you proceeded to trial, you would have the

7    right to have subpoenas issued to compel witnesses to

8    attend trial and testify on your behalf if you wish to

9    call witnesses.

10              If there's no trial, you don't have that

11   opportunity.

12              At trial you would have the right to remain

13   silent.  While you could give up that right and testify,

14   you couldn't be forced to testify.

15              In fact, if you decided to remain silent at

16   trial, United States couldn't comment on your silence

17   throughout the course of the proceeding.

18              And while you could remain silent, you could

19   also testify if that were your decision.  You could call

20   other witnesses and offer other evidence in support of

21   your position.

22              At trial you would be presumed innocent of any

23   charges against you; therefore, before you could be

24   convicted of a charge, the United States would be

25   required to prove the charge to a jury beyond a

1    reasonable doubt.  That's the standard that would be

2    required.

3         If I accept a plea of guilty from you,

4    according to your plea agreement, there would be no

5    trial, and you would give up the rights as I've described

6    to you.

7         And, again, Mr. Shelton, you do understand

8    that; correct?

9         DEFENDANT SHELTON:  Yes, sir.

10        THE COURT:  All right.  What I'd like to do at

11   this time is I would like to take a moment and go through

12   Count 2 with you, and after I've gone through this

13   charge, I'm going to ask you to tell me what it was that

14   you did to be guilty of the charge.

15        I know that there's some factual information in

16   your plea agreement.  I'll ask you if that's correct

17   information as well, but before we get to that I'll ask

18   you to tell me what it was that you did.

19        In Count 2 in this case charges as follows.

20        Beginning on or about July 1st, 2014, and

21   continuing through August 23rd, 2014, in Boyle County in

22   the Eastern District of Kentucky, and elsewhere, that you

23   did -- that you did use a facility and a means of

24   interstate or foreign commerce, that is, the Internet,

25   through the use of your cellular telephone to knowingly

1   persuade, induce, entice, and coerce, and did attempt

2   to do so, an individual who had not attained the age of

3   18 years, to engage in sexual activity for which any

4   person can be charged with a criminal offense in

5   violation of Title 18 of the United States Code,

6   Section 2422, Subsection (b).  That's the charge in the

7   case.

8           Can you tell me in your own words what it was

9   that you did to be guilty of that charge, Mr. Shelton?

10          DEFENDANT SHELTON:  I had sexual text messages

11  with a minor.

12          THE COURT:  All right.  Were you enticing the

13  minor to engage in some type of sexually -- sexual

14  activity?

15          DEFENDANT SHELTON:  Yes.

16          THE COURT:  Did that occur during the time

17  that's charged in Count 2 of the indictment?

18          DEFENDANT SHELTON:  Yes.

19          THE COURT:  And were either you or the person

20  that you -- that would be the subject of the enticement

21  located in Boyle County, which is in the Eastern District

22  of Kentucky?

23          DEFENDANT SHELTON:  Uh-huh.

24          THE COURT:  If this case proceeded to a jury

25  trial, the government would be required to prove four

1   elements to obtain a conviction.  They're set out in

2   your plea agreement in paragraph 2.  I know that you've

3   had the opportunity to review those elements with

4   Mr. Murphy.

5           If this case proceeded to a jury trial, do you

6   believe the government could prove those elements by the

7   standard that's required, which is beyond a reasonable

8   doubt, with regard to your conduct in the case?

9           DEFENDANT SHELTON:  Yes.

10          THE COURT:  Your plea agreement in paragraph 3

11  also outlines the facts that the government submits it

12  could prove beyond a reasonable doubt, and it states that

13  you admit these facts as well.

14          Are the facts that are set forth in paragraph 3

15  true and correct to the best of your knowledge and

16  belief?

17          DEFENDANT SHELTON:  Yes, sir, they are.

18          THE COURT:  Is it your intention to enter a

19  plea of guilty to Count 2 because you are, in fact,

20  guilty of that charge and for no other reason?

21          DEFENDANT SHELTON:  Yes.

22          THE COURT:  Mr. Marye, in your opinion has a

23  sufficient factual basis been stated for the Court to

24  accept a plea of guilty from Mr. Shelton to Count 2 of

25  the indictment?

1          MR. MARYE:  Yes, Your Honor.

2          THE COURT:  Mr. Murphy, do you agree as well?

3          MR. MURPHY:  I believe so, Your Honor, yes.

4          THE COURT:  All right.  Let me just cover one

5  other matter, the forfeiture charge.

6          Mr. Shelton, the United States alleges that by

7  virtue of the actions that are alleged in Count 2 that

8  you should be required to forfeit certain property to the

9  United States in accordance with forfeiture statutes.

10          And the items of property that the government

11  seeks to forfeit would be computer and associated

12  equipment that's listed in the forfeiture allegation,

13  which would be a Samsung Galaxy -- it's actually a cell

14  phone, Centura Model SCH-S738C, MAC address, and then it

15  has the address listed.  And then all software and

16  peripherals associated with -- it says computer, but it

17  would be the cellular telephone, and it should be vested

18  in the United States and forfeited to the United States

19  in accordance with those forfeiture statutes.

20          You also agree to forfeit any interest that you

21  would have in those items listed by virtue of your

22  actions alleged in Count 2?

23          DEFENDANT SHELTON:  Right.

24          THE COURT:  All right.  And, Mr. Shelton, how

25  do you plead to Count 2 of the indictment?

1           DEFENDANT SHELTON:  I plead guilty.

2           THE COURT:  Well, I am satisfied with the

3    responses that you have given me, and I will make the

4    following findings in your case at this time.

5           It is the finding of this Court in the case of

6    the United States versus James Matthew Shelton that

7    Mr. Shelton is fully competent and capable of entering an

8    informed plea.

9           Further, his plea of guilty is a knowing and a

10   voluntary plea, which is supported by an independent

11   basis in fact containing the essential elements of the

12   offense that has been charged in Count 2.

13          His plea, therefore, will be accepted.  He will

14   be adjudged guilty of the offense that is set forth in

15   that count.

16          The sentencing hearing for Mr. Shelton will be

17   scheduled for here in Lexington on Monday, December 5th

18   at 10:00 a.m.  It will be subject to any intervening

19   orders of the Court.

20          Mr. Marye and Mr. Murphy, how does that look on

21   your calendar at this time?

22          MR. MARYE:  That's fine with the United States.

23   Thank you, Your Honor.

24          THE COURT:  All right.

25          MR. MURPHY:  It appears to be fine, Your Honor.

```
 1               THE COURT:  All right.  If a conflict develops,
 2    if you could just contact opposing counsel; and if we
 3    need to move this, we'll attempt to accommodate your
 4    schedule.
 5               MR. MURPHY:  I will do.  Thank you, Your Honor.
 6               THE COURT:  So December 5th here in Lexington
 7    beginning at 10 o'clock.
 8               Mr. Shelton, I talked with you a few moments
 9    ago about your presentence report.
10               DEFENDANT SHELTON:  Uh-huh.
11               THE COURT:  You will need to meet with the
12    probation officer as the officer begins to work on your
13    presentence report.
14               DEFENDANT SHELTON:  Right.
15               THE COURT:  You're entitled to have counsel
16    present --
17               DEFENDANT SHELTON:  Okay.
18               THE COURT:  -- as you meet with the probation
19    officer.  It's always a good idea for you to have your
20    attorney present for that meeting.
21               DEFENDANT SHELTON:  All right.
22               THE COURT:  I've asked you a number of
23    questions here this morning, Mr. Shelton, and it does
24    appear to me that you've understood all my questions.
25    Let me make sure that that's the case.
```

1            Do you feel like you've understood all of the

2    questions I've asked you?

3            DEFENDANT SHELTON:  Yes, sir, I do.

4            THE COURT:  Is there anything that you were

5    unclear about or that you had questions about?

6            DEFENDANT SHELTON:  No, none.

7            THE COURT:  It is the current practice of the

8    Court not to sign the nonbinding plea agreements in

9    cases.  The plea agreement itself will be -- will be

10   filed in the record.

11           The supplement will be filed under seal but

12   will be returned to the United States at the time of the

13   sentencing hearing to maintain that document.

14           Are there any other issues we need to take up

15   in the case?

16           MR. MARYE:  Not on behalf of the United States,

17   no.  Thank you, Your Honor.

18           THE COURT:  Mr. Murphy, are you aware of

19   anything else?

20           MR. MURPHY:  No.  Thank you, Your Honor.

21           THE COURT:  Mr. Shelton, good luck to you.

22           DEFENDANT SHELTON:  Thank you, sir.

23           THE COURT:  We'll call the next matter,

24   10 o'clock matter up in about five minutes.

25           THE CLERK:  Yes, Your Honor.

1          THE COURT:  Thank you.

2      (Whereupon, the Rearraignment Hearing proceedings

3  concluded at 11:00 a.m.)

4              C E R T I F I C A T E

5      I, Peggy W. Weber, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9
   March 30, 2017                     s/Peggy W. Weber
10 DATE                               PEGGY W. WEBER, RPR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25