**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

Eastern District of Kentucky
F I L E D

JUL 2 4 2018

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**JAMES MATTHEW SHELTON**

PETITIONER,

**V.**

CRIM ACTION #: **5:16-CR-3-DCR**

CIV ACTION #: _____

**UNITED STATES OF AMERICA**

RESPONDENT.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF 28 U.S.C § 2255**
**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**GROUND ONE**

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Prior to commencing of the Initial Appearance & Arraignment proceedings on February 8, 2016, Petitioner, James Shelton, met with his defense attorney Mr. Robert Murphy for the first time briefly conferring without any subject relating to Shelton's mental health or competency to stand trial arising, Mr.Murphy shortly thereafter, nevertheless, moved the court for an evaluation of Petitioners competency assuring him after the fact of the evaluation being for purposes of sentencing mitigation.

Following the district courts granting of said motion for 'Order of Competency to Stand Trial' R.14., Petitioner was transferred to Federal Medical Center Lexington where he underwent a complete

psychological/psychiatric study in compliance with the courts order resulting, finally, in the psychiatric report received by the court and docketed for hearing before Judge Reeves on the 27Th of June, 2016.

During the extremely brief (approximately ten minute) hearing, per prior agreement between the defense and government the report(s) submitted as to the competency and sanity of Petitioner were stipulated to - not requiring appearance of the examiner Dr.Betsy Campbell - there being in the words of Mr.Murphy, "nothing to refute." R.59. PgId#.243 Ln 6 following which the court adopts the findings, establishing Petitioner as "Competent and able to proceed and understand the nature of the proceedings." R.59. PgId#. 243 Ln 11-13 the reports, subsequently filed under seal R.22.

Shelton argues his attorney rendered ineffective assistance of counsel in violation of the constitutionally guaranteed Sixth Amendment right to "...have the Assistance of counsel for his defense." U.S. Amend VI that furthermore, "...encompasses the right to effective assistance of counsel." Watson v. Anglin, 560 F.3d 687, 690 (7Th Cir. 2009)(Citations omitted) due to counsel not only improperly moving for the evaluation itself without conferring first, with his client, (to include doing so without just cause), but grossly misadvising Shelton as to the purpose of it as well.

Petitioner further argues, as a consequence of

2.

his counsels deficiencies, violation of his Fifth Amendment Right against self-incrimination as well as Fourteenth Amendment Right to cross-examine witnesses and present rebuttal witness through counsels failure to subject the evaluation to adversarial testing - said report, then used inappropriately (with no objection from counsel) in determination of the 262 top of guideline sentence ultimately imposed.

It's foregone, in order to prevail on such claim of ineffective assistance of counsel Shelton must demonstrate both 1.) that his counsels performance was deficient, and 2.) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984). A, 'reasonable probability' being, "[one] sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct at 2052.

As established in United States v. Ross, 703 F.3d 856, 867 (6Th Cir. 2012) there must be "reasonable cause to question [a] defendants competency." the standard, "in determining whether there was 'reasonable cause' to doubt the defendants competency, we look to "evidence of a defendants irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed. 2d 103 (1975).

That said, furthermore, "[T]he bar for incompetency

is high a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of proceedings against him'." United States v. Miller, 531 F.3d 340 (6Th Cir. 2008)(quoting Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed. 2d 103 (1975).) And as this, in particular pertains to Shelton evident from the record, this bar was far, from met.

Not only was there no "prior medical opinion on [Petitioners] competence to stand trial," or any suggestion whatsoever on the record of "irrational behavior" on his part, it's certainly not reasonable moreover, to infer during the very brief initial encounter with his client prior to first appearance, that counsel could have ascertained of whether Shelton had a "sufficient present ability to consult his lawyer with a reasonable degree of rational understanding," doing so muchless, without at least personally inquiring, or even properly advising him of his intent to do so and of what may or may not (truly) come of it.

Demonstrating further, counsels deficient performance Mr. Murphy, Shelton's attorney neglected to adequately (if at all) investigate his mental health history in forming the bases of the supposed cause requiring evaluation of Shelton's competency to stand trial having hardly the opportunity to become acquainted with his client

4.

Mr. Shelton - were this the case, he would've found that in spite of Petitioners past mental health struggles, he had been off meds, and was perfectly stable and able to assist in his own defense.

Ironically, by Mr. Murphy's deficient performance - making uninformed assumptions as set forth, Petitioner was precluded from even having the opportunity to demonstrate "whether [he had] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding..." Dusky v. United States, 362 U.S. 402, 402, 80. S.Ct. 788, 4 L.Ed. 2d 824 (1960) by failing to even address the issue of competence, first, with his client, leaving him essentially, in the dust as to his own defense - another deficiency establishing Stricklands first prong. "While the point of the Sixth Amendment is not to allow Monday-Morning quarterbacking of defense counsel's strategic decisions, a lawyer cannot make a protected decision without investigating the potential bases for it." English v. Romanowski, 601 F.3d 714, 728 (6Th Cir. 2010). "Effective representation further requires that the lawyer discuss the results of his investigation with his client on possible approaches to the case so that the client has some reasonable understanding of his situation" Aff'd, 575 F.2d 1147, 1149-50 (5Th Cir. 1978).

For arguments sake, were evaluation of Sheltons competency truly necessary, Petitioner demonstrates

further deficient performance of counsel resulting in violation of his Sixth Amendment Right where, "In all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." By failing to provide meaningful adversarial testing – Stipulating to the report as opposed to arriving prepared and cross-examining/presenting rebuttal witnesses as is customary and constitutionally guaranteed in such a proceeding, especially where there's potential for the resulting hearing/findings being used against Petitioner.

While one could obviously, not fault counsel for exercising sound judgment in this case where there's irrefutable evidence present as to establish Petitioners competency (as it was), it's definitely, far from harmless error being that the deficient performance amounted to deprivation of substantial rights by way of the uncontested report being used outside its original purpose at sentencing, resulting consequently, in Shelton involuntarily incriminating, and subjecting himself to a very significant increased term of imprisonment, establishing prejudice, "We held that a defendant could meet this standard [Prejudice] only by establishing that the attorney's error produced a significant effect on his sentence." Paters v. United States, 159 F.3d 1043, 1046 (7Th Cir. 1993)(Opinion by Eschbach, J.)(citing Durrive v. United States, 4 F.3d 548, 551 (7Th Cir. 1993). Considering the district court's excessive weight

of Shelton's  mental health history substantiated/reinforced by the  uncontested evaluation Petitioner had been originally informed (after the fact), of supposedly being of use in securing him a downward variance which quite obviously, had the opposite effect.

(See Affidavit in corroboration of the foregoing as well as the outlined argument in Ground Four)

## GROUND TWO
### INEFFECTIVE ASSISTANCE OF COUNSEL

At sentencing, the district court reviewed the Sentencing Memorandum R.42. Pg#.2 filed by Shelton containing therein, a "request for relief under title 18, section 3553(a) which the court reviewe[d] as a 'variance from the guideline range'." R.58. PgId#. 203 Lns 15-20. Proceeding to review the guideline calculations - Petitioners base offense level of 40, minus a three-level reduction per the plea as moved for by the government and sustained by the court reducing the total offense level to 37, the final guideline  range 210 to 262 months with Shelton placed in criminal history category I.

Following arguments by both parties for a downward variance, the court chose to reject the position and subsequently sentenced Shelton to the max 262 months of his guideline range R.58. PgId#. 228 Lns 5-7/PgId#.228 Lns 3-5 and upon entertaining objections to; 1.) the sentence announced, 2.) objections under United States.

v. Bostick, and 3.) requests for additional findings R.58. PgId#. 235 Lns 20-25 Mr.Murphy tendered none, whatsoever.

Petitioner was deprived of effective assistance of counsel during sentencing, in violation of the Sixth Amendment where his counsel failed to object to the denial of the downward variance request/overall sentence imposed, resulting collaterally, in further violation of his substantial right(s), namely, the Right to Appeal, which, per the terms of the plea agreement, Petitioner retained the right of, if only the right to challenge nothing outside the sentence imposed as explained by the court at the change of plea hearing:

"You waived the right to appeal the guilty plea and the conviction. In other words, you couldn't take a direct appeal to the Sixth Circuit to challenge those matters, the guilty plea or the conviction. But because this paragraph [of the plea agreement] is silent about your ability to appeal the sentence, you would have - - you would have the right to do that. In other words, you could file a timely appeal to challenge your sentence with the Sixth Circuit." At R.60. PgId#. 269 Lns 2-11.

Being as that may, counsel, of course present at this proceeding, should have grasped this and preserved the sentence imposed for proper appellate review where the fact of it being more or less his only available avenue of appeal.

Now, while Shelton will concede this particular issue as having been better raised on direct appeal

8.

and reviewed for plain error in spite having not originally been raised See Bostic, 371 F.3d at 873 (holding that if a party does not raise an objection after being given a final opportunity to raise new objections not previously raised and thus will face plain error on review.) in this instance, however, Petitioner argues deprivation of "a meaningful appeal of right denied" Evitts v. Lucey, 469 U.S. 387, 391-99, 105 S.Ct. 830, 83 L.Ed. 2d 821 (1985) by virtue of deficient counsel on part of both trial/appellate counsel (See Ground Four) establishing cause for procedural default where "Something external to the petitioner, something that cannot be attributed to him[,]... impeded [his] efforts to comply with the... procedural rule." Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed. 24 640 (1991) that being here - failure to object and preserve for appeal the sentence imposed and failure to object and preserve for appeal the sentence imposed as well as failure to object, identify, and present said error on direct appeal.

"In certain circumstances", furthermore, "counsels ineffectiveness in failing to properly preserve claim for review will suffice to establish cause." Edward v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed. 2d 518 (2000). Ineffective assistance of counsel, including appellate counsel, "Constitutes sufficient cause to excuse [a] procedural default." Gunner v. Welch, 749 F.3d 511,520 (6Th Cir. 2014).

9.

Thus, Shelton contends as supported by the record and facts, that prejudice has been shown. "A petitioner who establishes ineffective assistance of counsel automatically satisfies the prejudice component." Strickler v. Greene, 527 U.S. 263, 28, 119 S.Ct. 1936, 144 L.Ed 2d 286 (1999).

### GROUND THREE
### INEFFECTIVE ASSISTANCE OF COUNSEL

On January 8, 2016 Petitioner was charged in a three count indictment R.1. PgId#. 4 alleging:

Count 1 - James M. Shelton employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, knowing or having reason to know that such visual depictions would be transmitted using a means or facility of interstate commerce, all in violation of 18 U.S.C. § 2251(a).

Count 2 - James M. Shelton did use a facility and means of interstate or foreign commerce, that is, the internet, through the use of his cellular telephone, to knowingly persuade, induce, entice, and did attempt to do so, an individual who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, all in violation of 18 U.S.C. § 2422(b).

Count 3 - James M. Shelton did knowingly distribute visual depictions using a means and facility of interstate and foreign commerce, that is, by computer over the internet, and the production of said visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions were of such conduct, all in violation of § 2252(a)(2).

10.

The respective penalties:

Count 1 - Not less than 15 years nor more than 30 years imprisonment, $250,000 fine, and not less than 5 years to life supervised release.

Count 2 - Not less than 10 years nor more than **life** imprisonment, $250,000 fine, and not less than 5 years to life supervised release.

Count 3 - Not less than 5 years nor more than 20 years imprisonment, $250,000 fine, and not less than 5 years nor more than lifetime supervised release.

Petitioner, later on August 22, 2016, entered into a plea agreement See R.32. whereupon the government would agree pursuant to U.S.S.G § 3E1.1 to decrease the offense level by 2 points for acceptance of responsibility in addition to an additional one point decrease based off the timely notice of intent to plead guilty.

Regarding the plea process (to include review of the Pre-Sentencing Report), Shelton argues receipt of ineffective assistance of counsel rendered resulting effectively, in his plea having not been "knowingly, intelligently, or voluntarily" entered into as to be outlined and through corroboration of the Affidavit in support of this ground

1.) Shelton was not apprised of the possibility, before pleading, of civil commitment upon release as a collateral consequence of his plea.

-The Adam Walsh Child Protection and Safety Act of 2006, Pub.L.No. 109-248, 120 Stat. 587, provides inter alia, for indefinite civil commitment of federal

11.

prisoners after the expiration of their sentence – the following three elements required to prove by "clear and convincing evidence" as held in the statute's definition of "sexually dangerous person":

- "A prior act (or attempted act) of 'violent sexual conduct or child molestation,'"
- "A serious mental illness, abnormality, or disorder; and"
- "A resulting serious difficulty refraining from sexually violent conduct or child molestation if released." United States v. Carta, 592 F.3d 34, 39, 42 (1St Cir. 2010)(quoting 18 U.S.C. § 4247(a)(5),(6), See also 18 U.S.C. § 4248(d)).

Civil commitment is a very realistic possibility for Petitioner especially in light of his mental health concerns of which the court expressed significant concern with enough as is, therefore making it all the more vital for Petitioner's counsel to have advised him of this serious possibility, which certainly, would be expected of competent and professional counsel acting at "an objective standard of reasonableness." At 57 (quoting Strickland, 466 U.S. at 688).

2.) Concerning the PSR (Sealed R.52.) prepared in the case, Petitioners counsel properly reviewed the report with Shelton to include          calculating his offense level and guideline range – making no objections, however, upon the Office of Probations later amending of the PSR – adding an additional two points prior to sentencing, Shelton's counsel neglected informing him, specifically, of the grounds and nature of the increase in points,

12.

failing also, to recalculate and reinform him of the new increased guideline range he'd be subjected to this, even resulting in the district court's admonishment of both parties:

"This court's duty is not to try to correct errors that counsel may have made in making an estimation as to a guideline range. That's for counsel to do in the future, and should not allow mistakes then to attempt to alter an appropriate sentence in the case..." At R.58. PgId#. 228 Lns 8-13.

With the aforementioned statement of the court, effectively, preserving Shelton's contention, plus, United States v. Gaviria, 116 F.3d 1498 (D.C. Cir.),Cert denied,522 U.S. 1082 (1997) "Counsel was ineffective for giving incorrect sentencing information in contemplation of plea." he would argue here, the instant claim of ineffective assistance of counsel being further substantiated.

3.) Discussing plea options, Shelton contends ineffective assistance of his counsel - misadvising Petitioner of the sentence he was to receive by pleading to Count Two, rather than One and Three. (Please see Affidavit to this effect.)

Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. Missouri v. Frye, 566 U.S. 134, 140, 132 S.Ct. 1399, 182 L.Ed. 2d 379 (2012); See also Padilla v. Kentucky, 559 U.S. 356, 373, 130 S.Ct. 1473, 176 L.Ed. 2d 284 (2010), Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct.

366, 88 L.Ed. 2d 203 (1985).

Shelton contends "'that counsel's representation fell below an objective standard of reasonableness'"(quoting Strickland, 466 U.S. at 688) in context of the plea process by his counsel's misinformation as to the potential consequences of the plea, not taking the possibility of the court departing upwards into account, this, in addition to the deficiencies demonstrated in this ground supported by the Affidavit rendering his plea invalid.

Because a guilty plea operates as a waiver of important constitutional rights it is "Valid only if done voluntary, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed. 2d 143 (2003) quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed. 2d 447 (1970)).

### GROUND FOUR
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Upon a timely filed Notice of Appeal R.50. Ms. Amy L. Copeland was appointed as Petitioner's appellate counsel raising in her brief prepared on behalf of Shelton the following: "Did the district court commit reversible error at sentencing when it failed to address Shelton personally in order to permit him to mitigate his sentence, as required by Fed.R. Crim.P. 32(i)(4)."

In response, the government filed its own succinct brief arguing that Petitioners claim was "baseless"

14.

(See Case # 17-5090 Brief of the Plaintiff-Appellee R.30. Pg#. 6) and went on further stating that "Shelton applies a narrow focus by claiming that '[t]he district court never personally and unambiguously invited Shelton to speak on his behalf.'" And, that, "This court does not apply 'a mechanical interpretation of the right to allocution, and allocution is not such a right.'" Citing in its brief, United States v. Wolfe, 71 F.3d 611, 615 (6Th Cir. 1995) R.30. Pg#. 7.

   The Circuit court in affirming the district courts judgment See Case#. 17-5090 R.32-1 echoed in its opinion the Wolfe case cited from the governments reply further stating, "the district court satisfied its obligation under Rule 32."

   Petitioner now contends he was deprived of his Sixth Amendment Right to counsel on appeal by his appellate attorney overlooking a more promising issue (or issues) in favor of the lone issue raised, of which had no reasonable hope of prevailing, depriving Shelton further, thereby, of his constitutional right to appeal.

   In the appellate context, Shelton here "must demonstrate his appellate counsel made an objectively unreasonable decision by choosing to raise other issues instead of [the challenged] issue, meaning that issue 'was clearly stronger than issues that counsel did present'." Webb v. Mitchell, 586 F.3d 383, 399 (6Th Cir. 2009)(quoting Smith v. Robbins, 528 U.S. 259, 285, 288, 120 S.Ct. 746, 145 L.Ed. 2d 756

15.

(2000)). And to establish prejudice in this context, Shelton, further, "must demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to raise [the challenged] issues on appeal, he would have prevailed'" Webb, 586 F.3d at 399 (quoting Robbins, 528 U.S. at 285).

Petitioner would concede, his appellate counsel is certainly not required to present every non frivolous claim, however, is, expected to "Select the most promising." Jones v. Barnes, 463 U.S. 745, 752-53, S.Ct. 3308, 77 L.Ed. 2d 987 (1983) in addition to also understanding the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 3308, 77 L.Ed. 2d 987 (1983)).

Bearing that in mind, Shelton here, outlines the particular issue(s) "clearly stronger" - arguing the "reasonable probability" present therein that he could've prevailed:

### THE DISTRICT COURT ABUSED ITS DISCRETION DENYING THE MOTION FOR DOWNWARD VARIANCE - IMPOSING A 262 MONTH TOP OF GUIDELINE SENTENCE WITH LIFETIME SUPERVISED RELEASE

As imposed, Shelton's 262 month sentence is substantively unreasonable. The district court abused its discretion in denying Petitioner's motion for downward variance opting instead, for a top of guideline sentence with a lifetime term of supervision rendering an **excessive** and unnecessarily **harsh** sentence greater than necessary to

comply with the factors set forth in 18 U.S.C. § 3553(a).

The primary objective of Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection [concerning the need for the sentence imposed]." Accordingly, courts must consider several factors including:

(1.) The nature and circumstances of the offense and the history and characteristics of the defendant (2.) the need for the sentence imposed...(3.) the kinds of sentences available, (4.) the kinds of sentence and sentencing range established... (5.) any pertinent policy statement... (6) the need to avoid unwarranted sentence disparities among defendants with similar conduct, and (7) the need to provide restitution...

Furthermore, the court should review the reasonableness of a sentence using a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 28, 41, 128 S.Ct 586, 591, 169 L.Ed 2d 445 (2007). In reviewing sentences for reasonableness, we determine, first, whether the district court committed any significant procedural error, such as miscalculating the guideline range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. United States v. Pugh, 515 F.3d 1179, 1190 (11Th Cir. 2008).

Second, the court examines whether the sentence was "substantively reasonable under the totality of the circumstances." United States v. Turner, 626 F.3d 566, 573

17.

(11Th Cir. 2010). The challenging party bears the burden to show the sentence is unreasonable in light of the record and the §3553(a) factors. Pugh 515 F.3d at 1189.

Applying this review to Shelton, at sentencing: First, in regards to any procedural errors - While there are no miscalculations or apparent treatment of the guidelines as mandatory, Petitioner would argue the district court erred in its presumption of the calculated guideline range being reasonable - and at, "failing to consider the 18 U.S.C. § 3553(a) factors," Shelton argues that the district court also erred, and outlines the following relevant facts in support from the record that of which appellate counsel was deficient for not raising "...[identifying] the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement" Strickland, 466. U.S.at 690.:

Following its denial of the requested downward variance, the court made this statement in response to the misestimation of Sheltons guideline range:

"This court's duty is not to try to correct errors that counsel may have made in making an estimation as to a guideline range. That's for counsel to do in the future, and should not allow mistakes then to attempt to **'alter an appropriate sentence in the case...'**" At R.58. PgId#. 228 Lns 8 -16(Emphasis added).

Shelton argues, as shown from the record, the district court apparently at odds with pre-existing case law/precedent where "The guidelines are not only not mandatory on sentencing courts they are also not to be presumed

reasonable." Nelson v. United States, 129 S.Ct. 890, 892, 172 L.Ed. 2d 719 (2009). See also United Stats v. Bolds, 511 F.3d 568, 580 (6Th Cir. 2007).

Taking the record in as a whole with the district court's continuous interjections, excessive weight on Shelton's mental health, and its failure to even sufficiently acknowledge the parties arguments in support of the downward variance (amongst other things), would substantiate the courts presumption of Shelton's guidelines as reasonable (or "appropriate" as stated), the court going so far as threatening departure upward from the guidelines.

It's foregone, all in all, that "the sentencing court does not enjoy the benefit of a legal presumption that the guidelines sentence should apply." Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed. 2d 203 (2007)- Thus, establishing procedural error under the "deferential abuse-of-standard" and will so continue...

At the outset of the sentencing proceedings the district court noted for the record having "...reviewed the sentencing memorandum filed by the United States in the case, as well as the memorandum filed by the defendant, which also includ[ed] a request for relief under Title 18, Section 3553(a) which the court reviews as a variance from the guideline range." Sentencing Transcript R.58. PgId#. 203 Lns 15-20.

Next, Shelton's counsel, Mr. Murphy, took to the lectern in delivery of his summation - opting not to repeat any of

19.

the information contained within the sentencing memorandum emphasizing from it, instead, his clients absence of criminal history, his mental health issues, as well as highlighting Petitioners behavior as "aberrant" PgId#. 207 Lns 1-6 drawing the courts interjection, stating, "... that wouldn't be necessarily borne out by the competency evaluation of the report... indicat[ing]... some mental health concerns, and at least a pedophilia concern... So I'm not sure we can say that this is aberrant behavior." PgId#. 207 Lns 7-15.

In response, Shelton's counsel bows to the findings from the evaluation as stated in the courts interjection, however, managing, essentialy, to draw the very important distinction between one with pedophile-like tendencies, versus one who actually acts upon them (being that Shelton has never up until this point been under investigation, or convicted of such conduct) then proceeding to voice his concern over his clients mental health issues as "they will probably haunt him the rest of his life." PgId#. 207 Lns 18-25.

For the next forty-one lines of the record, Counsel goes on to mention miscellaneous facts of Shelton's life history such as: Shelton's mothers illness, her absence from the proceedings that day due to financial reasons and her support and love, nonetheless, for her son also further emphasizing Shelton's immaturity and the loss of Shelton as his mothers sole caretaker PgId#. 208 Lns 1-21 before stressing, "... what will protect society and what will help

20.

[Shelton] are very, very, strict conditions of supervised release..." PgId#. 209 Lns 3-5 further stating, "I don't know that a sentence in the properly calculated guideline range would do anything more for [Shelton], or society, for that matter, than a sentence at or near the bottom end of the guidelines as initially calculated, and that would be in that 14 year range at right at 168 months. So in a nutshell, I would just say what would 18 or 20 years or more do that 14 years wouldn't do?" PgId#. 209 Lns 8-16. This, drawing yet again, interjection by the court stating, "Other than protecting the public for that period of time." PgId#. 209 Lns 17-18.

Finally concluding, Mr. Murphy asks the court on behalf of his (now late) mother to be fair, and requesting that the court, "...give deference to what I have recommened and what we have recommened, but also what [the government] has recommened... that carries a lot of weight with the court, and I ask that you consider that." PgId#. 210 Ln(s) before granting Shelton the floor for his own words.

At this point, following Petitioner's allocution, the court turns to Mr. Marye, for the government, seeking to discuss what might support the downward variance requested by both parties along with the cases cited within the government's sentencing memorandum under §3553(a)(6) the court remarking how it seems he, Mr.Marye, has "taken contradictory positions here." (Ln 10-11) going on to say "This case either is serious or it's not serious, and if

21.

its not, then perhaps a variance is appropriate." At PgId#. 211 Lns 12-14.

In support of the position of both parties the government submits that "the main reason... that a sentence at or near what the parties have calculated the guidelines would perhaps be appropriate in this is case, is that [Shelton] was not in a position to follow through with the threats that had been made..." PgId#. 211 Lns 21-13.

The court, cutting in, "...when you look at the type of person that commits some serious offenses throughout the country, against the school, against individuals, they have some of the same characteristics... as this defendant does, very immature, willing to act out... some history of suicidal idolization..." PgId#. 212 Lns 5-12.

Furthermore, "And in page 8 of the competency evaluation, mental health professionals indicate that those conditions that [Shelton] suffers from are not likely to change in the future. So he's likely to be as affected and immature and willing to act out perhaps 20 or 30 years from now as he is today..." PgId#. 212 Lns 13-18.

The government then concludes conceding the courts concern about Petitioner's mental health issues more than likely affecting him for the duration of his life - the government later in the record submitting as a caveat at PgId#. 217 Lns 11-17 "...one of the things I did not mention... that I probably should have is that I believe that the court should definitely impose a very, very substantial term of

supervised release on... Mr. Shelton, regardless of what sentence..."

Constituting the bulk of the district courts consideration of §3553(a) factors, it goes on from PgId#. 213 Ln 3 through PgId#. 220 Ln 15 litigating subsection (a)(6) pertaining to nationwide sentencing disparities cited within the governments memorandum at R.46. PgId#. 145 supporting its argument by listing comparable cases of which the district court and government spend the duration hashing out before the court finally rejects the argument See PgId#. 223 Ln 18 after which continuing to lecture on the issues of §3553(a)(6) before finally delving into the offense conduct and defendant characteristics as they relate to the general §3553(a) factors - the most relevant portions highlighted:

- "the concerns that I have in this particular matter, based upon the undisputed facts of this case, support a sentence, and would call for a sentence at the upper end of the guideline range, if not a variance above..." At PgId#. 225 Lns 5-9.

- "....look[ing] at the nature and circumstances of the offense, they're very serious. Not only was this defendant encouraging very young girls to send images of themselves... there [were] conversations, online conversations about encouraging bestiality..." At PgId# 225 Lns 10-15.

- "...look[ing] at his educational history, [Petitioner] had serious problems in school..." At PgId#. 225 Lns 20-21.

- "And as I've indicated, [Shelton] has some mental health issues... but there are serious concerns going forward in terms of the issue of protecting the public. And as reflected at page 8 of that competency evaluation, the report indicates those problems are not likely to be resolved in the near

future or in the future." At PgId#. 225-226/Lns 2425/Lns 6-9.

- "... I am concerned going forward that regardless of the length of the sentence... a danger is presented... - - from this defendant..." At PgId#. 226 Lns 17-19.

- "I keep coming back to the issue of protection of the public... While the term of supervision that will be imposed... will include the standard conditions... it's not a fail-safe, and it does not guarantee protection of the public, especially if an individual has some history of mental health concerns, as this defendant does." At PgId#. 226-227 Lns 23-/Ln 5.

- "And then again, looking at the factor of unwarranted sentencing disparities, a sentence within the guideline range would not constitute an unwarranted sentencing disparity." At PgId#. 227 Lns 11-14.

- "... look[ing] at the specific information in the report, the offense conduct section... in terms of this defendants interactions with victims and... his history and characteristics in dealing with teen-aged boys in this case... they do shed some light on [Petitioner's] history and characteristics." PgId#. 227 Lns 15-23.

- "I believe the court certainly would be justified in imposing a variance upward..." At PgId#. 227-228 Lns 25-/Ln 1.

Announcing at PgId#. 229 Ln 6 Petitioners sentence, followed thereafter with the courts recitation of the multitude of restrictions and terms of supervised release (to include a 'search provision' imposed "based on [the courts] concern that [Shelton] does present a risk to others in the public." PgId#. 230 Lns 2-4) and entertainment of any 'Bostick' issues by the parties (none), the sentencing concluded with Petitioner being advised of his right to appeal by the deputy clerk.

24.

---

Evident, and as demonstrated through the outline, the district court erred procedurally by first; failing to uniformly consider the 18 U.S.C. § 3553(a) factors, rather, spending the majority of sentencing debating/lecturing subsection (6) while only cursorily and very vaguely addressing the remaining factors as well as neglecting to adequately articulate the 262 month sentence imposed – the improper manner by which it did so being the courts repetition, over and over again, of its concern with Petitioner's mental health and the danger as a result, he poses the public, not to mention, also, the courts repetitive mention of the "seriousness" of the crime.

Shelton's sentence, in light of the record to include the district courts statements and that of not just the defense, but the government as well, is quite plainly, greater than necessary to comply with the purposes of Section 3553(a) as, tracking the courts rationale:

1.) Concerning the courts assessment throughout the proceedings: The violation of 18 U.S.C. § 2422(b) itself, "using a means and facility of interstate commerce to knowingly persuade, induce, entice, and coerce an individual under the age of 18 to engage in sexual activity for which any person can be charged with a criminal offense" is inherently serious, unquestionably. All parties in this case are in agreement to this fact to include Shelton himself, stating at sentencing that "...I understand what I did was

25.

wrong and I understand the punishment that goes along with it... I've regretted it every day of my life. And I am truly sorry..." R.58. Sent Trans PgId#. 210 Lns 11-17.

Yet, the court, in explaining/justifying the sentence to be imposed continuously citing the "seriousness" of the offense in support of its position, is akin to one justifying their actions by merely stating them doing whatever they did, "just because..."

Either which way a person violates this statute the conduct is serious, therefore, merely stating the "seriousness," over and over again, simply cannot suffice for proper consideration of §3553(a) especially when its uncear from the record whether the court even takes into its consideration the factor making the offense **less serious**, nor the specfic characteristics of Shelton also in possible mitigation...

2.) Considering the sentencing courts rationale in regards to its heavy reliance on Petitioner's mental health: Setting aside the dispute surrounding the competency hearing, all parties seem to concur with the assesment of Petitioner's mental health issues, and the need for extended supervision because of which, as the issues according to the report, aren't likely to resolve themselves in the future. Being as that may, the sentencing courts logic in weighing contribution of Shelton's mental health issues in fashioning a sentence to ensure protection of the public, especially, is self-defeating.

26.

Subscribing to the courts logic, there's no sentence at all possible that Shelton could ever receive, (again, adopting the courts own rationale as evident from the record), because of him allegedly, being at risk of "acting out," endangering the public, as a result of his permanent mental-health issues, (except of course, lifetime imprisonment, that needless to say, would be the absolute of unreasonable)- a sentence clearly not greater than necessary would be the one moved for by both the government and defense (168 months) during which time the court fulfills its obligations of; Protecting the public, promoting respect for the law and just punishment for the offense, affording adequate deterrence to criminal conduct while also ensuring Shelton receives needed mental and sex offender treatment.

In sum, its unclear from the record whether the court considers its various options of fashioning a sentence (to include corrective - mental health/sex offender treatment) of which would have compelled the court to more seriously consider the sentence recommended by both parties - offseting the need for incarceration. In other words, it appears that the district court erroneously assumed that the only just punishment was the 262 month lifetime supervised release term imposed.

Petitioner argues, justifying a sentence even a day longer (94 months longer in this case) due to concerns of his mental health (despite ordering treatment both while incarcerated and after) when no matter how long the sentence

27.

imposed, the issues remain, constitutes a sentence, indeed, far greater than necessary to achieve the purposes set forth in §3553(a).

As outlined, Shelton would submit that the courts vague articulation of the basis of its denial of the downward variance and ultimate sentence imposed is in complete contrast to United States v. Brooks, 628 F.3d 791, 796 (6Th Cir. 2011)(alterations in original)(quoting Rita v. United States, 551 U.S. 338, 356, [704 Fed. Appx 490] 127 S.Ct. 2456, 168 L.Ed. 2d 203 (2007)(Citing Gall, 552 U.S. at 50), where "A sentencing explanation is adequate if it allows for meaningful appellate review, which is accomplished by 'Se[tting]forth enough [of a statement of reasons] to satisfy the appellate court that [the sentencing judge] has considered the parties arguments and has a reasoned basis for exercising his own legal decision making authority'."

Moreover and additionally, the district court "g[ave] an unreasonable amount of weight to [Shelton's mental health and to whether a downward variance could be supported in light of §3553(a)(6)] pertinent sentencing factor[s]." United States v. Fields, 763 F.3d 443, 455 (6Th Cir. 2014) the ultimate denial of said variance, again, not adequately explained as in Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456 168 L.Ed. 2d 203 (2007) where when defense presents nonfrivolous reasons for a different sentence than recommended guidelines - Judge "'normally' go[es] further and explains why [it] rejected."

28.

Under the 'totality of the circumstances' and 'in light of the record and the §3553(a) factors', Petitioners sentence is, clearly, unreasonable, this issue as demonstrated furthermore, satisfying both the deficient performance prong and prejudice prong where "...a reasonable probability [exists] that but for his counsel's unreasonable failure to raise the [aforementioned] issue on appeal, he would have prevailed'." To include her failing to raise ineffectiveness of counsel at sentencing for his failing to object to the sentence imposed - preserving it for review on direct appeal.

Changing gears, back in context of appellate counsel, in addition to not only being required to present every "nonfrivolous claim," rather, "the most promising" as previously mentioned, appellate counsel is, "obliged to make an argument sufficiently foreshadowed in existing case law." Thompson v. Warden, 598 F.3d. 281, 288 (6Th Cir. 2010) Also, "Counsels failure to raise issue whose resolution clearly foreshadowed by existing decisions might constitute ineffective assistance of counsel" (quoting Lucus v. O'Dea, 179 F.3d 412, 420 (6Th Cir. 1999).

Shelton cites the following existing decision(s) rendered clearly/sufficiently foreshadowing his own:

1.) United States v. Thomas, 498 F.3d 336 (6Th Cir. 2007): The district court failed to address the arguments contained within the defendants sentencing memorandum beyond generally noting "that it had 'received, read, and understood the sentencing memorandum.'" Id at 341.

Juxtaposed with Shelton See Sent Trans R.58. PgId#. 203 15-20. "I'll also note for the record I have reviewed the

29.

sentencing memorandum filed by the United States in the case, as well as the memorandum filed by the defendant..."

In Thomas, that particular "conclusory statement [left the appellate court] unsure as to whether the district court adequately considered and rejected [the defendants] arguments regarding proper application of the §3553(a) factors or whether it misconstrued, ignored, or forgot [the defendant] arguments."

Result: **VACATED** - The district court did not set forth enough to satisfy the appellate court that he has considered the parties arguments and has a reasoned basis for exercising his own legal decision making authority." Id (quoting Rita, at 551 U.S. at 336).

2.)United States v. Penson, 526 F.3d 331 (6Th Cir. 2008): The district court never verbalized which of these [3553(a)] factors were particularly important to the circumstances of this case or how it selected the sentence in light of these factors.

Juxtaposed with Shelton: It's unclear whether the court in assessing the seriousness of the offense took into consideration the parties argument of Shelton having not the means to follow through with his threats, instead, going about the mental health tangent, that of which additionaly, is also unclear whether it was that, or the seriousness of the offense ultimately influencing the sentence.

Result: **VACATED** - The district court did not satisfy its duty to explain its sentence merely by stating, "I think a sentence within the guideline range is appropriate."

3.) United States v. Jackson, 408 F.3d 301, 305 (6Th Cir. 2005) - "Just as in Thomas and Penson, the district court in this case failed to properly articulate its reasoning for arriving at Jacksons sentence." Also, "the district court... did not address Jackson's argument for why he deserved a below-guidelines sentence. While the district court may have ultimately rejected those arguments, the court still was required to make clear that it at least considered them."

See Thomas, 498 F.3d at 341 n.3.

    Result: **VACATED**

    Juxtaposed with Shelton: Self-explanatory.

    Additionally, please see Petitioners Exhibits 1 and 2; Both letters recieved - respectively dated (1.) May 8, 2017 (2.) July 11, 2017 - from appellate counsel Ms. Amy L. Copeland in regards to the direct appeal matter. Shelton contends these letters demonstrate his counsels knowledge of raising the issue whose outcome was not only foreshadowed in "existing case law," but herself as well. And please also, see in Petitioner's Affidavit in support under this respective Ground, a phone call between Shelton and Ms. Copeland where she suggests potential grounds for collateral attack some (if not all) of which, could've/should've been raised in her direct appeal brief.

    In light of the aforementioned, Shelton argues his appellate counsel rendered deficient performance where the presented ignore issue(s) are clearly stronger than the one raised on appeal as held in Lee v. Davis, 328 F.3d 896, 900-01 (7Th Cir. 2003) further, establishing prejudice as there clearly exists, as shown, "A reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466. at 694. "A 'reasonable probability' is a probability 'sufficient to undermine confidence in the outcome', but something less than a showing that the outcome more likely than not would have been different." Bigelow v. Williams, 367 F.3d 562, 570 (6Th Cir. 2004)(quoting Strickland, 466 U.S. at 693, 694)

31.

that deficient performance being, of course, "'unreasonably fail[ing] to discover' a nonfrivolous issue" on appeal. Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed. 2d 756 (2000).

### GROUND FIVE
### CUMULATIVE ERROR

In his last ground, Shelton argues - in addition to the previous grounds and facts in support (to include sworn affidavit statements) set forth within thus far, the following miscellaneous errors/deficiencies of his counsel altogether contributing to rendering the entire case against him unfair, and in violation of substantial constitutional rights.

At sentencing, counsel acted, essentially, as a mere spectator save for a 'comment' concerning the conditions of Petitioners supervised release prohibiting him from "going to locations where pornography may be present..." R.58. PgId#. 236 Ln 9 - PgId#. 237 Ln 3. Raising this issue, moreover, rather than objecting to the very unreasonable 21 year 10 month sentence followed by lifetime supervised release under extremely strict and invasive terms.

Combing the sentencing record further, at the points where Shelton counsel did actually speak, he didn't seem to have much to say in his clients defense, instead, seeming to distance himself from Shelton by reiterating to the court such things:

- "There's really no way to downplay how serious these cases are, so I won't - - I won't bore the court or waste time

32.

trying to do that... the victims in cases like this are always haunted, many of them, for the rest of their lives..." At R.58. PgId#. 206 Lns 14-21.

- "...what I would like to emphasize, in addition to what I've already said in my sentencing memorandum - - and I won't repeat any of that... He does have some mental health issues..." At PgId#. 206 Ln 25 - PgId#. 207 Ln 6.

- "... I'm going to say something that's probably not going to make my client happy... he is one of the most immature individuals I have ever dealt with. If there was ever a stereotypical mama's boy, then my client is one..." At PgId#. 208 Lns 10-14.

From approximately R.58. PgId#. 206 Ln 9 up to PgId#. 210 Ln 8 where Mr. Murphy turns to Shelton for words: Without bothering to develop the record/refresh the court as to key points in his prepared sentencing memorandum, neglecting to really highlight how exactly, in spite of an inherently serious crime, the circumstances surrounding Shelton's situation warranted a less severe sentence, making mention of Shelton's mental health without shedding light on him being otherwise stable, reinforcing the courts image of a crazed, sexually deviant uncontrollable psychopath and feeding further, the courts perception of Shelton as a dangerous person by his mental health because of his immaturity, or, "mama's boy" status - Constitutes the extent of Petitioner's counsel defending him whereas the government, bizarrely, seemed to advocate more on behalf of Shelton than his own attorney.

The government, on the other hand, and interestingly enough, under what could be perceived as a very patronizing

33.

district court, attempted to support the parties request for downward variance citing cases (attempting to show disparity) that the objective observer would figure the defense would be raising, which goes further to show, conclusively, the full unfortunate extent of the extremely poor and shoddy representation Petitioner was subject to, quite contrary to what's otherwise constitutionally guaranteed substantially impacting due process.

Attributing such deficient and incompetent representation (at sentencing particularly), could have possibly been Mr. Murphy's grief, understandable with the recent passing of a former colleague of his (See R.58. PgId#. 206 Lns 2-8 & Affidavit Statement under respective ground), or perhaps, simply intimidation of the presiding judge.

Either which way, "defendants cannot be left to the mercies of incompetent counsel," McMcann v. Richardson, 397 U.S. 759, 771, 25 L.Ed. 2d 763, 90 S.Ct 1441 (1970)(Opinion by White, J.). Shelton argues that his attorneys collective errors (to include that of appellate counsel) as demonstrated throughout the record in this, and the previous grounds had the effect of rendering the entire proceedings against him flawed. "A defendant must show that the combined effect of individual harmless errors was prejudicial as to render his trial fundamentally unfair." United States v. Trujillo, 376 F.3d 593, 614 (6Th Cir. 2004).

Shelton would argue further as he's shown that his attorneys conduct, unmistakably, was **not** "within the range

34.

of competence demanded of attorneys in criminal cases" McMann
v. Richardson, 397 U.S. 759, 771, 25 L.Ed. 2d 763, 90 S.Ct.
1441 (1970)(Opinion by White, J) which, under American
Jurisprudence, "fell below an objective standard of
reasonableness... under prevailing norms." Strickland v.
Washington, 466 U.S. 668, 688, 80 L.Ed. 2d 674, 104 S.Ct.
2052 (1984)(Opinion by O'Connor, J).

### RELIEF REQUESTED

Wherefore, in light of the facts, grounds, and affidavit
hitherto presented, all in supporting the motion under Section
2255 of Statute Title 28 to Vacate, Set Aside, or Correct
Sentence, Petitioner seeks vacation of his sentence &
remanding and reassignment of judges/divisions for
resentencing consistent with the rights constitutionally
afforded to defendants in criminal cases, namely, surpressing
the Compentency Evaluation report, appointing effective
counsel - seeking further, in the event of insufficiency of
the record and accompanying evidence in support, Shelton would
move the court to grant an Evidentiary Hearing to adequately
develop his grounds for relief.

Respectfully submitted on this 20th day of July , 2018.


_____
James Matthew Shelton
Reg#. 32700-057
F.C.C. Butner Low
P.O. Box 999
Butner, NC 27509

_____
Brandon M. Hardy Writ Writer
Reg#. 54752-018
F.C.C. Butner Low
P.O. Box 999
Butner, NC 27509

35.