UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JAMES MATTHEW SHELTON
    PETITIONER,

V.                                    CRIM ACTION #: **5:16-CR-3-DCR**
                                      CIV ACTION #: _____

UNITED STATES OF AMERICA
    RESPONDENT.

_____/

**AFFIDAVIT IN SUPPORT OF GROUND(S) 1, 3, 4, AND 5
OF §2255 MOTION TO VACATE , SET ASIDE, OR CORRECT SENTENCE**

    Pursuant to the provision governing Section 3481 of Statute Title 18, I, James M. Shelton, hereby attest to the following facts:

1.) I am of legal age and competent.
2.) I was the defendant in the following criminal case: United States v. James M. Shelton, Case#. 5:16-CR-3-DCR, prosecuted in the Eastern District of Kentucky, Central Division - Lexington.

**GROUND ONE**
3.) Meeting briefly with my attorney, Mr.Murphy, for the first time prior to the commencement of Initial Appearance & Arraignment hearing, Mr. Murphy, having moved the court (without any forewarning or knowledge of his intention to do so) for an evaluation of my competency informing me after the fact, of said evaluation being for sentence mitigation.
4.) I was never advised by counsel of any possibility

of the resulting report from the competency evaluation being used against me.

5.) I was under the impression that proceeding with the evaluation was mandatory.

6.) Had my attorney, Mr. Murphy, inquired, I would/could have advised him of the following concerning this issue:

A.) In the year 2007 (approximately) I was taken off medication receiving follow up counseling in a group setting until my coping skills with my particular disorder improved to where said sessions were deemed no longer necessary (2008).

B.) At the age of eleven, I began medication until fifteen as a result of a misdiagnosis, the medication, furthermore, contributing to my history of suicide attempts as reported.

C.) In spite of my past mental health issues, I was/am stable, able to assist in my defense, and able to consult with my attorney with more than a reasonable degree of understanding.

7.) Prior to commencement of the competency hearing, my attorney allowed me review of the final report whereupon at concluding, I state "doesn't look too good" eliciting essentially no response, nevertheless, proceeding with the hearing.

8.) Had I been adequately advised, I would have chose NOT to submit to an evaluation of my competency, being that I was fully competent to stand trial/understand the proceedings against me.

9.) While under evaluation at FMC Lexington, I tried approximately two times, to get in contact with my attorney, to no avail.

**GROUND THREE**

2.

1.) I was never informed of the possibility of civil commitment before pleading guilty until a conversation with my mother where through research, she expressed her concern with the possibility of me being committed upon release, prompting me to inquire with Mr. Beck (Mr. Murphy's partner) as to the issue, him allaying my concern informing me that there was, essentially, no way possible of that occurring in my case.

2.) In discussion of possible plea options, Mr. Murphy mentioned the possibility of arranging a plea to both Counts one and Three yet, insisted I take Count Two alone.

3.) Concerning the cons of pleading out to Counts 1 and 3, Mr. Murphy's theory was that I would definitely be "box-car'd" (run consecutive) resulting in a minimum of 20 years with Count one carrying a 15 year minimum mandatory, plus Count Three carrying 5 years minimum mandatory, should I enter into that particular arrangement.

4.) Concerning the pro's of pleading to Count One alone, Mr. Murphy expressed his desire of getting me home to my mother, maintaining this deal would be better because of supposedly, guaranteeing me, in so many words, no more than 15 years whereas with Counts 1/3, I'd be facing at least 20 years.

5.) I agreed for Mr. Murphy to arrange my plea of guilty to Count Two, reluctantly, however, due to the fact of that particular count carrying a maximum of LIFE imprisonment unlike the others - running the risk of a more severe sentence upwards to life despite Mr. Murphy's saying otherwise, with my luck, and because of the reputation of my Judge, Danny C. Reeves as being the "hanging Judge."

6.) The plea prepared at this point and having reviewed it, I expressed my unease signing it to Mr. Murphy due to lingering reservations over the maximum life sentence possible - eventually doing so, however, at Mr. Murphy pointedly reassuring me of there supposedly being no

3.

way of the Judge giving me more than 15 years...

6.) Following receiving 262 months of incarceration, Mr. Murphy apologized - basically, going on to concede my apprehension present throughout the plea process - or in other words, acknowledging an "I told you so..."

### GROUND FOUR

1.) Following the Circuit courts denying of my Direct Appeal during a phone call with my appellate counsel Ms. Amy L. Copeland, she informed me in so many words of there being (approximately) six grounds for relief on 2255 (to include ineffective assistance of counsel) - the filing of which, she stated she was not permitted to advise me as to whether or not to file upon my asking.

### GROUND FIVE

1.) During sentencing, in wake of the passing and memorial service of Mr. Murphy's former colleague, (for which my sentencing was continued for), I believe the understandable state of grief I perceived of his, however, adversely affected his ability to advocate on my behalf as effectively weren't that the case.

Pursuant to the provision governed by Section 1746(2) of Statute Title 28, I, James M. Shelton, hereby declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on the 20th day of July, 2018.

James M. Shelton Pro Se
Reg#. 32700-057
F.C.C. Butner Low
P.O. Box 999
Butner, NC 27509

4.