UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.

JAMES MATTHEW SHELTON,

    Defendant/Movant.

No. 5:16-CR-03-DCR-HAI-1

RECOMMENDED DISPOSITION

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal prisoner James Matthew Shelton has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. D.E. 71. In his motion, Shelton argues five grounds on which he submits he is being held in violation of the Constitution of the United States. The first three grounds claim ineffective assistance of his trial-level counsel, the fourth ground claims ineffective assistance of his appellate counsel, and the fifth ground alleges cumulative error. Shelton asks the Court to "Vacate and Remand for re-sentencing." *Id.* at 12.

Having reviewed Shelton's motion and memorandum, the government's response, and Shelton's reply in detail, and upon consideration of the record, the Court **RECOMMENDS** that Shelton's motion be denied. The Court further **RECOMMENDS** that no certificate of appealability be issued.

I.

In January 2016, a federal grand jury returned an indictment charging Shelton with three counts involving the sexual exploitation and enticement of minors. D.E. 1. In August 2016, Shelton pled guilty to Count 2 of the indictment, which charged him with using a means and facility

of interstate commerce to knowingly persuade, induce, entice, and coerce an individual under the age of 18 to engage in sexual activity for which any person can be charged with a criminal offense. *Id.* at 1–2; D.E. 31. Defendant also admitted and agreed to the forfeiture allegation contained in the indictment. D.E. 32 at 1.

Based on Shelton's criminal history category and total offense level, his Guidelines range was 210–262 months. D.E. 58 at 4. The offense also carried a statutory minimum of ten years of imprisonment. *Id.* On January 10, 2017, District Judge Reeves sentenced Shelton to 262 months of imprisonment to be followed by a life term of supervised release. *See* D.E. 49 at 2, 3.

Shelton appealed to the United States Court of Appeals for the Sixth Circuit, arguing that "the district court committed reversible error at sentencing when it failed to address Shelton personally in order to permit him to speak or present any information to mitigate his sentence, as required by Fed. R. Crim. P. 32(i)(4)." D.E. 71 at 2. The Sixth Circuit affirmed Shelton's sentence. D.E. 61. Shelton did not appeal to the United States Supreme Court, and he represents that he has not filed any other motions for post-conviction relief. *See* D.E. 71 at 2.

II.

In his motion, Shelton raises five grounds on which he claims he is entitled to relief. Each of the grounds asserts in some fashion an ineffective assistance of counsel argument.[1] Under the test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Shelton must first show that his counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Shelton must show that his counsel's deficient performance prejudiced

---

[1] Robert Michael Murphy served as Shelton's trial-level counsel, and Amy M. Copeland served as his appellate counsel. Shelton has waived "the attorney-client privilege insofar as is necessary in addressing his ineffective assistance of counsel claims within his § 2255 motion." D.E. 78.

2

his defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Because Shelton pled guilty, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Shelton bears the burden to prove his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The Court recognizes that Shelton is proceeding *pro se*, without the assistance of an attorney, and thus construes his motion liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (per curiam).

A.

Shelton first claims that his trial-level counsel was ineffective for moving for a competency evaluation without adequately considering whether his mental condition warranted the evaluation or conferring with him, and for "misadvising him . . . as to the evaluation being for sentence mitigation purposes." D.E. 71 at 4. He further claims that his trial-level counsel's stipulation to the competency report violated his Fifth, Sixth, and Fourteenth Amendment rights. Here, he contends that the stipulation prevented the report from being subjected to "adversarial testing" and that the report was "heavily relied upon by the court in determination of the sentence ultimately imposed." *Id.*

The government does not specifically dispute Shelton's factual assertion that his counsel failed to inform him that his counsel would be requesting a competency evaluation on his behalf. Thus, the Court will assume that Shelton's trial-level counsel did not inform him about the request for a competency evaluation. But, even with that fact viewed in Shelton's favor, the record

establishes that it was not unreasonable for his trial-level counsel to have requested a competency evaluation based on mental-health concerns. In other words, Shelton has not shown that his counsel's request that he undergo a competency evaluation was deficient.

The United States Court of Appeals for the Tenth Circuit addressed a similar argument by the defendant in *United States v. Boigegrain*, 155 F.3d 1181 (10th Cir. 1998). In that case, the defendant's attorney had requested that he undergo a competency evaluation over the defendant's objections. *Boigegrain*, 155 F.3d at 1187. On direct appeal from the district court's commitment order, the Tenth Circuit considered defendant's argument that "his lawyer, the public defender, abandoned his role as the defendant's advocate and therefore rendered ineffective assistance of counsel in raising the competency issue against the defendant's wishes." *Id.* Upon review, that court found no Fifth or Sixth Amendment violation by defendant's counsel and held "that when a lawyer has reason to believe that her client may not be mentally competent to stand trial, she does not render ineffective assistance of counsel by making her concerns known to the court." *Id.*; *see also id.* at 1188 (quoting American Bar Association Standards for Criminal Justice). Although not binding, the Court finds this holding to be persuasive.

In this case, defense counsel's motion for a competency evaluation stated that he had "met with the Defendant, talked with the Defendant's mother, studied the bond report, and been made aware of the Defendant's long history of mental health issues dating back to his early, teenage years." D.E. 13 at 1; *see also* D.E. 60 at 9 ("I filed the motion for the study [] because of his past history."). Under the standard outlined in *Boigegrain*, defendant's trial-level counsel did not render ineffective assistance of counsel by presenting the mental-health concerns about his client to the Court, especially after his investigation revealed a lengthy history of such concerns. *See United States v. Jackson*, 179 F. App'x 921, 933 (6th Cir. 2006) (noting that defense counsel "was

4

discharging his 'professional duty' as an officer of the court to raise the issue if counsel has a good faith doubt as to the defendant's competence") (citing *Boigegrain*, 155 F.3d at 1187).

Moreover, even if Shelton's counsel's actions were deficient by requesting a competency evaluation, Shelton has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Specifically, Shelton cannot show he was prejudiced by the competency report because his presentence investigation report, relied upon by District Judge Reeves at sentencing, also contained an extensive discussion of Shelton's mental-health issues. D.E. 52 at 13–15. To state it differently, although District Judge Reeves relied on Shelton's competency evaluation during his sentencing, the information contained in that report was the same in kind as that contained in Shelton's presentence investigation report. *See* D.E. 58 at 35 (discussing "mental health conditions that are referenced in the report and were thoroughly outlined in the competency evaluation performed previously by the Bureau of Prisons").

The presentence investigation report, including discussion of Shelton's mental and emotional health, would have been prepared even if no competency evaluation had been conducted. *See* Fed. R. Crim. P. 32(c)(1)(A), (d)(2)(A). Notably, Shelton does not identify any objection to any of the mental-health information in the presentence investigation report that he claims counsel should have raised. Thus, Shelton was not prejudiced by his counsel's request that he undergo a competency evaluation because District Judge Reeves would have been able to consider similar information bearing on Shelton's mental health in the presentence investigation report. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Shelton also briefly argues that his trial-level counsel provided ineffective assistance by stipulating to the competency evaluation report. Here, he claims a violation of his Fifth, Sixth, and Fourteenth Amendment rights. However, because Shelton has not developed this argument, the Court need not do so for him. And, the record indicates that Shelton agreed with his counsel's decision to stipulate to the report. *See* D.E. 59 at 4 ("But he's willing to allow the Court to make that finding just on the submission of the report. We have nothing to refute any of the information contained in there.").

Moreover, those issues aside, no Fifth Amendment issue arises when "the psychiatrist's findings [are] confined to the limited, neutral purpose of determining the defendant's competency to stand trial." *United States v. Thompson*, 462 F. App'x 561, 564 (6th Cir. 2012) (citing *Estelle v. Smith*, 451 U.S. 454, 465 (1981)). Shelton claims that the sanity evaluation that accompanied the forensic report as to competency prejudiced him as well, but he points to no evidence in support of that claim. He likewise has not demonstrated a Sixth Amendment violation occurred. *Cf. id.* ("[T]he Sixth Amendment's right-to-counsel protection in this context at most requires that defense counsel be informed of the 'nature and scope' of the evaluation and put 'on notice' that he would have to anticipate the prosecution's use of the mental exam if he raised a 'mental status defense.'"). Finally, his Fourteenth Amendment argument is meritless because no state action occurred in this case. *See* U.S. Const. amend. XIV.

For all of these reasons, Shelton's arguments in support of his first ground for relief fail.

B.

Shelton also claims ineffective assistance of his trial-level counsel in his second ground for relief. Here, Shelton contends that, following the Court's pronouncement of his sentence, his counsel failed to object to the denial of a downward variance and the subsequent top-of-the-

6

Guidelines sentence imposed. D.E. 71 at 5. He also claims that this failure of trial-level counsel meant that the issue was not properly preserved, precluding him from raising the issue on direct appeal, "in violation, essentially of [his] Right to Appeal." *Id.*; D.E. 71-1 at 9.

The transcript from Shelton's sentencing confirms that his trial-level counsel did not object to the denial of Shelton's request for a downward variance *after* the sentence was imposed. *See* D.E. 58 at 36. However, trial-level counsel was not required to do so because he had already presented an argument concerning that request to District Judge Reeves for consideration. As the record confirms, Shelton's trial-level counsel argued for a below-Guidelines sentence in the sentencing memorandum he filed on Shelton's behalf and in addressing the Court at the sentencing hearing. *See* D.E. 42 at 2; D.E. 58 at 9. Shelton's trial-level counsel was not required to re-raise an issue he had already submitted to the sentencing judge. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) (announcing procedural rule "requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised").

Still, even if Shelton's trial-level counsel's performance was deficient for not objecting to the top of the Guidelines sentence, Shelton has not shown that he was prejudiced by that error. Importantly, Shelton has not offered any persuasive arguments that, had he been able to argue the issue on appeal, the Sixth Circuit would have found his sentence procedurally or substantively unreasonable. The standard outlined by the United States Supreme Court in *Gall v. United States*, 552 U.S. 38 (2007), informs the Court's analysis.

In *Gall*, the Supreme Court directed appellate courts to review all sentences under an abuse-of-discretion standard. *Gall*, 552 U.S. at 51. First, an appellate court must:

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the

7

> Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Id.* Second, "[a]ssuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* "When conducting this review, the court will, of course, take into account the totality of the circumstances . . . . If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Id.*

Under *Gall*'s framework, any argument by Shelton that his sentence was procedurally unreasonable lacks merit because he has not shown that his Guidelines range was calculated incorrectly, that District Judge Reeves failed to consider the relevant statutory factors, or that his sentence was based on clearly erroneous facts. Moreover, the record belies any contention that District Judge Reeves failed to adequately explain the chosen sentence. *See* D.E. 58.

Likewise, Shelton's contention that any argument that his sentence was substantively unreasonable would have been successful on appeal is unconvincing. This is especially so because the appellate court is "entitled to afford a sentence within the advisory Guidelines range a rebuttable presumption of reasonableness[.]" *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012). Shelton has not pointed to any aspect of the record to show the Sixth Circuit would have been likely to find District Judge Reeves abused his discretion by sentencing Shelton to a sentence *within* the Guidelines.

In sum, although Defendant did not waive the right to appeal his sentence, see D.E. 32 at 4, he has not provided the Court with any grounds in his motion by which to find that his trial-level counsel provided ineffective assistance in regard to his sentencing proceeding.

8

C.

Shelton again claims ineffective assistance of trial-level counsel in this third ground for relief. Here, he argues that counsel's errors during pretrial proceedings rendered his guilty plea invalid. D.E. 71 at 6. Specifically, Shelton argues: (1) that his counsel "neglected to inform [him] of the realistic possibility of indefinite civil commitment upon release as a collateral consequence of the particular crime pled to"; and (2) that his trial-level counsel misadvised him about various aspects of his decision to plead guilty. *Id.* at 7.

1.

Shelton's contention that his trial-level counsel should have informed him about the collateral consequences of pleading guilty to a sex offense is a somewhat novel argument. Instead of disputing Shelton's statement that his counsel did not inform him of the possibility of "indefinite civil commitment," the government represents that "[i]nforming Shelton of the possibility of a civil commitment would have been premature of counsel." D.E. 81 at 9.

The potential for civil commitment to which Shelton refers is found in the Adam Walsh Child Protection and Safety Act. The purpose of that law is to "[t]o protect children from sexual exploitation and violent crime." *United States v. Volungus*, 730 F.3d 40, 46 (1st Cir. 2013) (quoting Pub. L. No. 109–248, 120 Stat. 587 (2006)). "To further this goal, the Act amends and supplements existing civil commitment provisions to allow the federal government to seek court-ordered civil commitment of certain sexually dangerous persons in custody." *Id.*

If an individual is certified as a "sexually dangerous person" under the Act by an appropriate official, the district court must hold a hearing to determine whether the individual is a sexually dangerous person. *Id.* At that hearing,

> the government bears the burden of demonstrating by clear and convincing evidence that the inmate is in fact a "sexually dangerous person," by showing that

9

   the individual: 1) has "engaged or attempted to engage in sexually violent conduct or child molestation," 2) "suffers from a serious mental illness, abnormality, or disorder," and 3) as a result of this disorder he "would have serious difficulty in refraining from sexually violent conduct or child molestation if released."

*Id.* (quoting 18 U.S.C. § 4247(a)(5)–(6), 4248(d)).

  In his affidavit, Shelton argues that he "was never informed of the possibility of civil commitment before pleading guilty until a conversation with [his] mother where through research, she expressed her concern with the possibility of [him] being committed upon release." D.E. 71-2 at 3. Shelton claims this prompted him to inquire with Mr. Beck (Mr. Murphy's partner) as to the issue, and Mr. Beck allayed Shelton's concern "that there was, essentially, no way possible of that occurring in [Shelton's] case." *Id.* In his memorandum of law, he further claims that civil commitment is a "very realistic possibility" for him "especially in light of his mental health concerns." D.E. 71-1 at 12. He submits that, given the focus on his mental health at his sentencing, it was "all the more vital for Petitioner's counsel to have advised him of this serious possibility." *Id.*

  The Court will assume that Shelton's trial-level counsel's performance was deficient for not informing him of the possibility of civil commitment. *See United States v. Francis*, No. 5:04-CR-74-KSF & No. 5:10-CV-7114-KSF, 2010 WL 6428639, at *9 n.9 (E.D. Ky. Dec. 30, 2010). But, through his filings, Shelton has not explained to the Court how the knowledge about potential civil commitment would have impacted his decision to plead guilty. That is, Shelton has not told the Court how he was prejudiced by his counsel's failure to inform him of that possibility. For example, he has not stated that he would have insisted to go to trial. Importantly, Shelton only asks for his sentence to be vacated, not for his conviction to be set aside. *See* D.E. 71-1 at 31. He therefore has expressly not claimed prejudice under *Hill*. *See Hill*, 474 U.S. at 59. Without such

10

a showing, his ineffective assistance of counsel claim based on his counsel's failure to inform him of the possibility of civil commitment necessarily fails.

2.

Shelton's next several arguments are similar in kind in that he contends his trial-level counsel "misadvised" him as to various aspects of the plea proceedings. Here, he claims that his counsel failed to advise or inform him of a change to his presentence investigation report, and that, having discussed the plea options with Shelton, his counsel "misadvised [him] as to the guidelines range he would be subject to upon entering in to the plea." D.E. 71 at 7. Shelton also obscurely argues that his trial-level counsel misadvised him as to the consequences of pleading to Count Two instead of pleading to Count One or Count Three of the indictment.

On these claims, Shelton has not shown that his counsel performed deficiently or that he was prejudiced by any deficient performance. By way of background, the United States Probation Office ("USPO") originally calculated Shelton's Guidelines range as 168 to 210 months. *See* D.E. 42 at 1; D.E. 46 at 2. That calculation was also reflected in the parties' plea agreement. *See* D.E. 32 at 3.

However, the USPO later determined that a two-level enhancement applied, pursuant to U.S.S.G. § 2G2.1(b)(6)(B)(i). *See* D.E. 52 at 22. This raised Shelton's total offense level, thereby increasing his applicable Guidelines range. *See* D.E. 42 at 2 ("This unanticipated change increased Shelton's potential sentence by approximately four years."). Yet, Shelton had notice that the Guidelines recommendation contained in his plea agreement was just that: a recommendation. D.E. 32 at 3; D.E. 60 at 14, 20–21. Further, notwithstanding the increase in Shelton's Guidelines range, his trial-level counsel and the government both argued for a sentence at the low end of his original Guidelines calculation. *See* 42 at 5; D.E. 46 at 2 (stating that the government did "not

11

object to the Court's departing downward from the correctly calculated guidelines range of 210 – 262 months to a sentence at or near the bottom end of the guidelines range as contemplated by the parties and contained in the initial PSR, that being 168 – 210 months").

In his motion and memorandum, Shelton claims that his counsel did not inform him of the increase of the total offense level. However, that claim is belied by the record. For example, at his sentencing, Shelton indicated to District Judge Reeves that he had had the opportunity to review his presentence investigation report and the opportunity to discuss the report with his attorney to his satisfaction. D.E. 58 at 2–3.

In this posture, Shelton has not provided the Court with any reason to believe that his plea was involuntary based on his counsel's advice concerning the calculations of his Guidelines range. Indeed, Shelton "cannot make that showing merely by telling us now that [he] would have gone to trial then if [he] had gotten different advice." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). Instead, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)) (internal quotation marks omitted). Shelton cannot meet this standard because he has not shown that any mistake by his attorney regarding his Guidelines-range calculation impacted his decision to plead guilty. In other words, any error by his trial-level counsel concerning his expected Guidelines range does not amount to ineffective assistance counsel rendering his plea involuntary or unknowing.

D.

In his fourth ground, Shelton claims ineffective assistance of his appellate counsel. There, Shelton argues that his appellate counsel overlooked meritorious issues that could have been presented on appeal. He further contends that the only issue his appellate counsel did raise on

12

appeal, relating to the district court's failure to address Shelton personally at his sentencing, was "all but assuredly guaranteed not to prevail in the face of pre-existing case law depriving [him] of an appeal with any reasonable chance to prevail in violation of his Right to Appeal." D.E. 71 at 8.

Under Sixth Circuit case law, "[a]ppellate counsel does not have an obligation to raise every possible claim that a client may have, and counsel's performance is presumed to be effective." *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017) (per curiam). Instead, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Id.* (internal quotation marks and corrections omitted). Further, "[t]o succeed on a claim that appellate counsel performed ineffectively, a petitioner also must demonstrate a reasonable probability that, but for his counsel's unreasonable failure to raise [an] issue on appeal, he would have prevailed." *Id.* (internal quotation marks omitted).

In his memorandum, Shelton contends that his appellate counsel should have argued "that the district court abused its discretion [by] denying the motion for a downward variance — imposing a 262 month top of Guideline sentence with lifetime of supervised release." D.E. 71-1 at 16. Relatedly, Shelton submits that his appellate counsel could have successfully argued that District Judge Reeves failed to adequately consider the 18 U.S.C. § 3553(a) factors when imposing Shelton's sentence.

The Court has already disposed of Shelton's arguments concerning the procedural and substantive unreasonableness of his sentence. As discussed above in Section II.B, neither the record nor the case law in this circuit supports Shelton's contentions that District Judge Reeves erred procedurally when imposing Shelton's sentence or that he abused his discretion when

13

weighing the various factors he was required to consider by statute. *See* D.E. 58 at 25–29 (discussing the § 3553(a) factors).

The cases Shelton cites in support of his position are similarly unavailing. For example, unlike the sentencing judge in *United States v. Thomas*, District Judge Reeves discussed the rationale for Shelton's imposed sentence in detail, rather than merely stating that he had received and read defense counsel's sentencing memorandum and briefly mentioning the statutory factors. *See United States v. Thomas*, 498 F.3d 336, 340–41 (6th Cir. 2007). Similarly, District Judge Reeves did not fail to "verbalize[] which of these factors were particularly important to the circumstances of this case or how [he] selected the sentence in light of these factors," *United States v. Penson*, 526 F.3d 331, 338 (6th Cir. 2008), nor did he fail to "include any reference to the applicable Guidelines provisions or further explication of the reasons for the particular sentence imposed," *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

Although Shelton has presented numerous arguments that his appellate counsel *could* have raised on appeal, he has not sufficiently shown that any of these arguments were "clearly stronger" than the one that was presented on appeal.

E.

Finally, Shelton claims cumulative error because his trial-level counsel "acted essentially as a mere spectator save for a 'comment' concerning one condition of [his] supervised release" and presented "scant mitigating evidence at sentencing," which resulted in the prosecution presenting more favorable arguments than defense counsel. D.E. 71 at 14. The Court may quickly dispense with this argument. Indeed, Shelton has not put forward a colorable claim under any of his theories for ineffective assistance of counsel. Having shown no individual error, Shelton's claim of cumulative error must fail. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007).

F.

As a concluding matter, Rule 8 of the Rules Governing Section 2255 Proceedings states that, "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Throughout its review of Shelton's motion, the Court has kept this instruction in mind. Although Shelton specifically requests an evidentiary hearing on his first ground for relief (D.E. 84 at 17), the Court does not find a factual dispute warranting a hearing on those issues. Similarly, the Court does not find that an evidentiary hearing is needed as to any other ground Shelton raises in his motion. *See* D.E. 71-1 at 35.

Finally, Shelton shortly argues that his sentence "resulted from a 'fundamental defect' in the proceedings, and thus, a 'complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process.'" D.E. 84 at 1 (quoting *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)). Here, Shelton's argument appears to simply be a recitation of the law cited by the government in its response. *See* D.E. 81 at 1. To be sure, Shelton does not develop this argument in any way, including failing to point the Court to the "non-constitutional error" that would be subject to the legal standard he cites. *See Watson*, 165 F.3d at 488.

III.

Accordingly, the Court **RECOMMENDS** that Shelton's motion to vacate be **DENIED**.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

15

been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The Court has considered the issuance of a Certificate of Appealability as to each of Shelton's claims.  No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings, Rule 8(b).  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, **by the District Court.**  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 2nd day of November, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge